EILEEN CAHILL *v.* BOARD OF EDUCATION OF THE CITY OF STAMFORD ET AL.

PETERS, HEALEY, PARSKEY, SHEA and F. HENNESSY, Js.

Argued January 14—decision released May 11, 1982

*Robert F. McWeeny* and *Eileen Cahill,* pro se, for the appellant-appellee (plaintiff).

*Richard A. Fuchs,* with whom, on the brief, was *Beverly Hodgson,* for the appellees-appellants (defendants).

F. HENNESSY, J. This is an appeal from a judgment denying the plaintiff Eileen Cahill's motion to set aside a verdict which denied her request for an injunction and awarded her damages in a breach of contract action. The defendants, the Stamford board of education and Joseph B. Porter, the superintendent of schools for the city of Stamford, have filed a cross appeal from the trial court's denial of their motion to dismiss based on lack of subject matter jurisdiction.

The plaintiff, who had attained tenure in the Stamford school system, taught biology at Rippowam High School. In 1969, the plaintiff took an

approved sabbatical, during which time she took courses in library science. Upon the plaintiff's return to school, a dispute arose as to her assignment. She was offered a position as librarian or science teacher at schools other than Rippowam High School, but rejected those offers. Following protracted negotiations during the 1970–71 school year concerning her employment, the plaintiff filed suit in March, 1971, alleging that the defendants' failure to employ her violated a contract between the Stamford board of education and the Stamford education association termed "Agreement of 1968–1970." The defendants, under the procedures authorized by General Statutes § 10-151 (b),[1] terminated the plaintiff's employment in August, 1971 for reasons unrelated to her refusal to accept an alternate assignment. The plaintiff did not appeal this termination. The contract action instituted by the plaintiff in March subsequently was nonsuited.

In 1975, the plaintiff revived suit against the defendants alleging that the defendants (1) breached the "Agreement of 1968–1970" (herein-

[1] General Statutes § 10-151 (b) provides in relevant part: "[T]he contract of employment of a teacher . . . may be terminated at any time for one or more of the following reasons: (1) Inefficiency or incompetence; (2) insubordination against reasonable rules of the board of education; (3) moral misconduct; (4) disability . . . (5) elimination of the position to which the teacher was appointed or loss of a position to another teacher . . . or (6) other due and sufficient cause . . . provided . . . prior to terminating a contract, a board of education . . . shall vote to give the teacher concerned a written notice that termination of such teacher's contract is under consideration and, upon written request filed by such teacher with such board . . . within five days after receipt of such notice, shall within the next succeeding five days give such teacher a statement in writing of its reasons therefor. Within twenty days after receipt from a board of education . . . of written notice that contract termination is under consideration, the teacher concerned may file with such board . . . a written request for a hearing, which shall be held within fifteen days after receipt of such request. . . ."

after the agreement) by failing to restore her to a suitable position within the school system; (2) dismissed her without cause in violation of General Statutes § 10-151; and (3) wilfully and deliberately attempted to discredit her and to injure her reputation. The defendants denied those allegations and affirmatively pleaded that the plaintiff's action was barred by her failure to exhaust specific contractual remedies, by laches, and by her failure to follow the appeals procedure set forth in General Statutes § 10-151. The defendants also filed a motion to dismiss the case for lack of subject matter jurisdiction, which the court denied.

The jury returned a general verdict for the plaintiff, awarding her $24,180 in damages. The trial court accepted the verdict, and denied the plaintiff's motion to set aside the verdict and her request for an injunction.

I

The plaintiff's initial claim is that the court erred in concluding and in instructing the jury that the defendants properly could initiate termination proceedings without reinstating her. The plaintiff's claim of error as to the court's conclusion of law amounts to a claim that the plaintiff was legally entitled to reinstatement. In her complaint, the plaintiff sought by way of relief, a mandatory injunction. A mandatory injunction does not automatically issue upon the showing of an enforceable legal right. *Connecticut Light & Power Co.* v. *Holson Co.*, 185 Conn. 436, 444, 440 A.2d 935 (1981); *Moore* v. *Serafin*, 163 Conn. 1, 8, 301 A.2d 238 (1972). In order for the plaintiff to be entitled to this remedy, " '[t]here must not only be a violation of the plaintiff's rights, but such a violation as is, or will be, attended with actual or serious

damage.' *Crouchley* v. *Pambianchi,* 152 Conn. 224, 227, 205 A.2d 492 [1964]. . . ." *Simmons* v. *Budds,* 165 Conn. 507, 515, 338 A.2d 479 (1973), cert. denied, 416 U.S. 940, 94 S. Ct. 1943, 40 L. Ed. 2d 291 (1974). Injunctions are not granted in cases where the plaintiff has an adequate remedy at law. *Berin* v. *Olson,* 183 Conn. 337, 340, 439 A.2d 357 (1981); *Hartford* v. *American Arbitration Assn.,* 174 Conn. 472, 476, 391 A.2d 137 (1978); *Potter* v. *Board of Selectmen,* 174 Conn. 195, 199, 384 A.2d 369 (1978). In the present case, the plaintiff received an adequate remedy at law in the form of damages. The court did not err in denying her request for an injunction. *Light* v. *Board of Education,* 170 Conn. 35, 41, 364 A.2d 229 (1975) (mandamus); see *McNamara* v. *New Britain,* 137 Conn. 616, 618, 79 A.2d 819 (1951).

We do not decide the plaintiff's claim that the court improperly instructed the jury as to the need for her to be reinstated inasmuch as the plaintiff has failed to follow our established rules of practice. Section 3060F (c) (2) of the Practice Book requires the appellant to include in her brief a verbatim statement of all relevant portions and exceptions to the charge to the jury. *State* v. *Stevens,* 178 Conn. 649, 656–57, 425 A.2d 104 (1979); *Maciejewska* v. *Lombard Bros., Inc.,* 171 Conn. 35, 38, 368 A.2d 206 (1976). This she failed to do. The plaintiff has presented us with no reason to disregard this rule, and our review of the record discloses none.

## II

The plaintiff further claims that the court applied the wrong statute regarding termination of tenured teachers. This claim is raised for the first time on appeal. The complaint specifically alleged a vio-

lation of General Statutes § 10-151, and that was the statute addressed by all involved in the trial of this matter. Subsequent to trial, the plaintiff discovered that No. 310 of the 1945 Special Acts[2] was in effect at the time the actions complained of in this suit were initiated. This special act, which set forth the law regarding procedures for terminating the employment of tenured teachers in the Stamford school system, superseded the otherwise applicable provisions of General Statutes § 10-151. General Statutes § 10-151 (d).[3]

Only in the most exceptional circumstances will this court consider a claim that was not raised in the trial court. Practice Book § 3063; *Mazur* v. *Blum*, 184 Conn. 116, 120, 441 A.2d 65 (1981); *State* v. *Burke*, 182 Conn. 330, 331, 438 A.2d 93 (1980); *State* v. *Evans*, 165 Conn. 61, 69, 327 A.2d 576

[2] 24 Spec. Acts 705, No. 310, entitled "AN ACT PROVIDING FOR TENURE OF OFFICE FOR SCHOOL TEACHERS IN THE TOWN OF STAMFORD," provided in relevant part: "SEC. 3. A teacher shall be dismissed after due hearing by the board of education only for incompetence, immorality or conduct unbecoming a teacher, or by reason of the permanent abolition of the position to which he was appointed or the department in which he served . . . . Notice of the hearing on such dismissal, by registered letter together with a copy of the charges preferred or the reason for dismissal, shall be served upon such teacher not less than six days nor more than twelve days prior to the date of such hearing. Such teacher shall have full opportunity to be heard in person and by counsel and to give and furnish evidence under oath in his defense. If said board shall find such charges proven, such teacher may be dismissed. Such teacher may appeal from the decision of said board to the state board of education . . . . The party adversely affected by the decision of the state board of education may appeal from such decision to any judge of the superior court for Fairfield county, which appeal shall be made returnable not more than twelve days nor less than six days after such decision of the state board of education . . . ."

[3] General Statutes § 10-151 (d) provides that: "The provisions of any special act regarding the dismissal or employment of teachers shall prevail over the provisions of this section in the event of conflict."

(1973). Such exceptional circumstances may occur where a new and unforeseen constitutional right has arisen between the time of trial and appeal or where the record supports a claim that a litigant has been deprived of a fundamental constitutional right and a fair trial. *State* v. *Williams,* 182 Conn. 262, 267, 438 A.2d 80 (1980); *State* v. *Evans,* supra. An exception may also be made where consideration of the question is in the interest of the public welfare or of justice between the parties. *Capozzi* v. *Luciano,* 174 Conn. 170, 175, 384 A.2d 359 (1978) (dissenting opinion); *Kavanewsky* v. *Zoning Board of Appeals,* 160 Conn. 397, 401, 279 A.2d 567 (1971).

The plaintiff urges us to find error because the trial court failed to consider or bring to the attention of the jury a claim not made either in the complaint or in a request to charge the jury. The plaintiff in her complaint alleged that there was a breach of contract by failing to restore her to a position of like nature, seniority, status and pay after she returned from her leave in accordance with the terms of the agreement. The plaintiff further alleged that she was improperly terminated in accordance with the mandate of § 10-151 of the statutes. The court and the jury considered these claims after a full hearing. In order for us to require the trial court to consider Special Act No. 310 as a breach of the agreement or a violation of the tenets of § 10-151 the complaint would have to allege facts sufficient to state a cause of action under Special Act No. 310. *Stevens* v. *Neligon,* 116 Conn. 307, 311, 164 A. 661 (1933). There was no claim made that the plaintiff did not receive a hearing or notice of a hearing or that improper grounds were used in order to terminate her

employment. A complaint drafted in such a manner as to lead the trial court to consider a specific contract and statute without setting forth other facts which would call the attention of the court to search for other grounds upon which the plaintiff's prayer for relief could be considered will not allow this court to consider such a claim raised for the first time on appeal. There being no exceptional circumstances present nor facts pleaded which would allow us to consider a violation of Special Act No. 310, the plaintiff's claim cannot be considered on appeal.

### III

The defendants, on cross appeal, contend that the trial court lacked jurisdiction to hear this case because the doctrine of sovereign immunity bars a teacher's suit for breach of contract against a local board of education.

The doctrine of sovereign immunity, which establishes that the state cannot be sued without its consent, is well recognized in Connecticut. *Sentner* v. *Board of Trustees,* 184 Conn. 339, 342, 439 A.2d 1033 (1981); *Horton* v. *Meskill,* 172 Conn. 615, 623, 376 A.2d 359 (1977); *Textron, Inc.* v. *Wood,* 167 Conn. 334, 339, 355 A.2d 307 (1974). The protection afforded by this doctrine has been extended to agents of the state acting in its behalf. *Baker* v. *Ives,* 162 Conn. 295, 297, 294 A.2d 290 (1972); *Somers* v. *Hill,* 143 Conn. 476, 480, 123 A.2d 468 (1956). Town boards of education, although they are agents of the state responsible for education in the towns, are also agents of the towns and subject to the laws governing municipalities. *Cheshire* v. *McKenney,* 182 Conn. 253, 258, 438 A.2d 88 (1980); *Mase* v. *Meriden,* 164 Conn.

65, 67, 316 A.2d 754 (1972); *Wallingford* v. *Board of Education,* 152 Conn. 568, 573–74, 210 A.2d 446 (1965); *Keegan* v. *Thompson,* 103 Conn. 418, 422–23, 130 A. 707 (1925). Thus, a local board of education is bound by and may sue or be sued on contracts in the same manner as municipal corporations. 17 McQuillin, Municipal Corporations (3d Ed. 1968 Rev.) § 49.60, p. 310; 1A Antieau, Municipal Corporation Law (1982) § 10.08; see *Light* v. *Board of Education,* 170 Conn. 35, 41, 364 A.2d 229 (1975); *Milford Education Assn.* v. *Board of Education,* 167 Conn. 513, 520, 356 A.2d 109 (1975); *Waterbury Teachers Assn.* v. *Board of Education,* 162 Conn. 390, 416, 294 A.2d 546 (1972). A breach of contract between a local board of education and its employees does not give rise to a conclusion that such an action would operate to control the activities of the state or subject it to liability. Employment contracts in such circumstances remain primarily the function of the local communities, and any damages resulting from a breach of these contracts would be paid by the community, not the state. *Mt. Healthy School District Board of Education* v. *Doyle,* 429 U.S. 274, 280, 97 S. Ct. 568, 50 L. Ed. 2d 471 (1977); *Lostumbo* v. *Board of Education,* 36 Conn. Sup. 293, 296, 418 A.2d 949 (1980); cf. *Somers* v. *Hill,* 143 Conn. 476, 479–80, 123 A.2d 468 (1956). Sovereign immunity is therefore inapplicable in this case.

## IV

The defendants also challenge the jurisdiction of the court on the basis that a suit against a board of education cannot be maintained except under provisions created by statute. If the plaintiff's suit had been based solely on the alleged wrongful

termination of her employment, the defendants would be correct in asserting that the plaintiff's only recourse was statutory. *Mazur* v. *Blum,* 184 Conn. 116, 119–20, 441 A.2d 65 (1981); *Delagorges* v. *Board of Education,* 176 Conn. 630, 633, 410 A.2d 461 (1979); *Miller* v. *Board of Education,* 166 Conn. 189, 191, 348 A.2d 584 (1974). The plaintiff's complaint, however, charges not only that the defendants dismissed her without cause (count two), but also that the defendants breached the agreement by failing to restore her to a position of "like nature, seniority, status and pay" after she returned from her sabbatical leave (count one). To the extent that the complaint alleged a breach of the agreement, the court had jurisdiction to hear this case. See *Light* v. *Board of Education,* supra; *Milford Education Assn.* v. *Board of Education,* supra; *Waterbury Teachers Assn.* v. *Board of Education,* supra. Since the jury returned a general verdict without the benefit of special interrogatories, we can conclude that the case was decided on the ground of breach of contract. *Nichols* v. *Coppola Motors, Inc.,* 178 Conn. 335, 348, 422 A.2d 260 (1979); *Johnson* v. *Flammia,* 169 Conn. 491, 495, 363 A.2d 1048 (1975).

## V

The defendants' final argument is that the trial court lacked jurisdiction as a matter of law because of the plaintiff's failure to exhaust administrative remedies. This contention is without merit. Among the rights, responsibilities, and prerogatives of the board listed in Preamble (D) of the agreement are the rights "to employ, assign and transfer teachers . . . ." This section further provides that "[n]o action taken by the Board with

respect to such rights, responsibilities and preroga-
tives, other than as there are specific provisions
herein elsewhere contained, shall be subject to the
grievance provisions of this agreement." Although
the agreement specifically provided that changes
in assignment "within a building unit" were subject
to appeal through the grievance procedure,[4] no sim-
ilar allowance was made for teacher transfers.[5]
Thus, the plaintiff's only remedy for contesting the
defendant's decision to transfer her was the court
process.[6] The trial court properly assumed juris-
diction.

There is no error.

In this opinion PETERS, HEALEY and PARSKEY, Js.,
concurred.

SHEA, J. (concurring). I concur without reser-
vation in the disposition of the plaintiff's appeal in
which the majority opinion finds no error.

Although I agree with the result, I disagree with
the interpretation of the collective bargaining
agreement adopted by the majority in deciding the
defendants' cross appeal, in which the failure of the
plaintiff to exhaust the grievance procedure estab-
lished by the bargaining agreement is claimed to
bar any of the relief sought in this action. The
agreement defined "[g]rievance" to mean "a claim
by a teacher . . . that there has been a violation,

---

[4] Article XVI (3) of the agreement.
[5] The defendants sought to transfer the plaintiff from her position
at Rippowam High School to one of two middle schools within the
system.
[6] The court has interpreted only one particular aspect of the agree-
ment in order to apply the facts peculiar to this case. We do not
feel it necessary to comment further on the construction or inter-
pretation of the agreement.

misinterpretation or misapplication of the provisions of this Agreement or of the rules, regulations, administrative directives or policies of the Board of Education." A four step procedure for processing such grievances is prescribed, culminating in a decision of an arbitrator which "shall be advisory." Neither in brief nor in argument before us has the plaintiff contended that her dispute with the defendants was not a grievance within the terms of the bargaining agreement. She maintains only (1) that the jury to whom the special defense of failure to exhaust the contractual remedy was submitted settled the issue by their verdict and (2) that, where the decision of the arbitrator is merely advisory, the failure to follow that avenue does not bar her action.

At variance with the claims of the parties, the majority opinion adopts a construction of the agreement that the plaintiff's dispute, which involved her transfer to another school, was not subject to the grievance procedure. Reliance is placed upon a clause in the preamble which reserves to the board of education the full right to operate the schools, including the authority "to employ, assign and transfer teachers," and which excepts from the grievance procedure any action of the board exercising such right, "other than as there are specific provisions herein elsewhere contained . . . ." The opinion points then to a provision that changes in teacher assignments within a building unit made by the supervisory principal are "subject to appeal through the grievance procedure . . . ." There is no other reference in the entire agreement to the availability of the grievance procedure for a particular subject matter. The majority relies upon the failure to mention the grievance procedure in the article of

the agreement dealing with transfer of teachers from one school to another by the superintendent of schools, the subject of the present controversy, as signifying its unavailability for such purpose, but the same logic would mean that any dispute concerning the many other matters covered by the agreement, such as compensation, sickness benefits, sabbatical leave, working conditions, and promotions, would also be exempt from the grievance procedure established. Under the majority view, the sole area in which this procedure would apply is the change in the assignments of a teacher within a single school made by the principal. This unusual result ought not to be imposed upon the parties contrary to their intentions, as indicated by the absence of any suggestion of such an interpretation before now, unless it is mandated by the language used in the agreement.

My reading of the agreement is that the preamble clause reserving to the board of education its statutory prerogative of full authority for the operation of the schools and excepting the exercise of this power from the grievance procedure "other than as there are specific provisions herein elsewhere contained" does not narrow the definition of grievance in the agreement but seems merely to stress that only those disputes falling within that definition are subject to that procedure. A preamble cannot be given the effect of overriding an operative provision of a document.

It cannot be questioned that the controversy between the plaintiff and the defendants fits the definition of a grievance as "a claim by a teacher ... that there has been a violation, misinterpretation or misapplication of the provisions of this Agree-

ment or of the rules, regulations, administrative directives or policies of the Board of Education." That such a broad definition would have been adopted if the only intended subject of the grievance procedure were a change in teacher assignments within a single school, as the majority opinion concludes, is highly unlikely. It is not clear why express reference is made to the availability of the grievance procedure for disputes about such changes in assignments. Since there are no precise guidelines for making such changes by a principal comparable to those established for transfers to other schools by the superintendent, it is at least arguable that a dispute over such a change would not involve a claimed "violation, misinterpretation or misapplication" of the terms of the agreement or regulations of the board. Scriveners commonly prefer redundancy to uncertainty, a habit which explains why the maxim inclusio unius, exclusio alterius is merely an aid to construction and not a rule of law having universal application. Any ambiguity should be resolved in favor of giving the arbitration provision in a labor contract as broad a scope as the language of the agreement will permit. *United Steelworkers of America* v. *Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582, 80 S. Ct. 1347, 4 L. Ed. 2d 1409 (1960) ; *International Union* v. *General Electric Co.,* 148 Conn. 693, 699, 174 A.2d 298 (1961). I would construe the agreement as making the grievance procedure available for resolution of the present controversy between the parties, a view which is reinforced by the absence of any claim to the contrary made by them.

My interpretation of the agreement as making the grievance procedure available to the plaintiff

does not respond to her claims that the general verdict of the jury must be deemed to have resolved the issue of non-exhaustion of contractual remedies in her favor and that, where the final outcome of the arbitration which culminates the grievance procedure is merely advisory, resort to that procedure is not a prerequisite to the institution of a legal action.

In her brief the plaintiff refers to the pages of the transcript wherein the trial court submitted to the jury the question of whether she had exhausted her contractual remedy, charging that she could not recover if she failed to avail herself of the grievance procedure. No exception to this portion of the jury instruction was taken by either party. Although the defendants in their brief state that the failure of the plaintiff to utilize the contractual grievance procedure is "undisputed," there is no reference to the transcript or the record supporting this assertion. Upon appeal the parties may not rely upon any fact not supported by such references. Practice Book §§ 3060F (b), 3060G (b). In any event, the failure of the defendants to except to the charge leaving the issue to the jury precludes their belated claim that there was no factual dispute concerning this special defense. Practice Book § 3063.

My conclusion that the verdict resolving the issue of  exhaustion of contractual remedies in favor of the plaintiff cannot now be challenged makes it unnecessary to consider her second claim that, where the final outcome of the grievance procedure is merely an advisory opinion by an arbitrator, a party may bypass it and proceed directly with a lawsuit. See *Alloy Cast Steel Co.* v. *United Steel-*

*workers of America, AFL-CIO,* 429 F. Sup. 445 (N.D. Ohio 1977); *Tulsa-Whisenhunt Funeral Homes, Inc.,* 195 N.L.R.B. 106n. (1972).

I concur in the result reached by the majority.