[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
On February 16, 1995, the plaintiff, Michael J. Saccardi, filed an application for a temporary injunction and a complaint CT Page 3757 against the defendants, Michael R. Nast, Anthony Markowski, H. Bruce Tucci and the Stamford Board of Education ("Board"). The plaintiff, in his application for temporary injunction, seeks to enjoin the defendants from considering alleged recruiting violations by the plaintiff when considering the plaintiff for coaching positions in the Stamford public school system. The facts as alleged in count five of the complaint, upon which allegations the application for a temporary injunction are founded, are as follows. In 1984, the plaintiff received a three year appointment as head coach of men's varsity basketball at Westhill High, which was renewed in 1987 for another three years. In 1989, allegations of recruiting violations were made against the plaintiff. The board found no merit to the allegations, but the Connecticut Interscholastic Athletic Conference (CIAC) concluded otherwise. In order to avoid litigation, the Stamford school system entered into a settlement agreement with CIAC. The Stamford Public Schools also entered into an agreement, dated December 22, 1989, whereby the Stamford Public Schools agreed not to discipline the plaintiff for the alleged violations.
Since 1989, the plaintiff has applied for the positions of Assistant Baseball Coach at Westhill High, Assistant Baseball Coach at Stamford High, Assistant Basketball Coach at Stamford High, and a renewal as Head Basketball Coach of Westhill High. The plaintiff was not renewed at Westhill, and to date, has either been denied, or has not been appointed to any of the other positions. The plaintiff alleges that coaches in the Stamford Public Schools are to be appointed under a set criteria provided by the Memorandum of Agreement Re: Selection of Coaches entered into by the Stamford Public Schools and the Stamford Education Association (SEA), of which the plaintiff is a member. The plaintiff further alleges that as a candidate he had a greater length of service as a coach in the particular sport, greater length of service on the level below that applied for, had adequate written evaluations and was a member of the SEA. The plaintiff alleges that the defendants used the alleged CIAC violations in their considerations for the positions, in violation of the December 22, 1989 agreement, that it is likely to continue in the future, that it has caused the plaintiff irreparable harm, and that the plaintiff has no adequate remedy at law.
The defendants, on March 6, 1995, filed a memorandum in opposition to the plaintiff's application for a temporary injunction, along with documentary evidence. The plaintiff also filed pretrial memoranda dated March 6, 1995. The defendants filed CT Page 3758 a reply memorandum in court on March 13, 1995. On March 13, 1995, an evidentiary hearing was held where testimony was given by the plaintiff, and the defendant H. Bruce Tucci, the principal of Westhill High School.
The plaintiff contends that the December 22, 1989 agreement is not covered by the collective bargaining agreement. Therefore, he need not exhaust his administrative remedies prior to seeking judicial relief, although the plaintiff further contends that he has in this instance. The plaintiff also argues that he has no adequate remedy at law, and that he has been irreparably harmed. The defendants maintain that the plaintiff has failed to establish irreparable harm, that the plaintiff cannot establish the likelihood that he will prevail on the merits because he has not exhausted his administrative remedies, that he is estopped from relitigating this issue, and that the plaintiff has an adequate remedy at law.
"A preliminary injunction is to preserve the status quo until, upon final hearing, the court may grant full relief." Stamford v.Kovac, 228 Conn. 95, 101, 654 A.2d 897 (1993). The granting of a temporary injunction is within the court's discretion; Wight v.Lasaracina, 8 Conn. L. Rptr. 174, 175 (January 5, 1993, Teller, J.) quoting, Scoville v. Ronalter, 162 Conn. 67, 74, 291 A.2d 222
(1971); however, the plaintiff must show: (1) that he is likely to succeed on the merits of his claim; (2) that without the injunction he will sustain irreparable injury; (3) that the remedy at law is inadequate; and (4) that a balancing of the equities tilts in the plaintiff's favor. See Waterbury Teacher Association v. Freedom ofInformation Commission, 230 Conn. 441, 446, 645 A.2d 978 (1994);Griffin Hospital v. Commission on Hospitals Health Care,196 Conn. 451, 456-57, 493 A.2d 229 (1985); see also Baron Consultingv. Complete Environmental Testing, Superior Court, Judicial District of New Haven at Meriden, Docket No. 245421 (August 24, 1994, Dorsey, S.T.R.); Rosinka Joint Venture v. Williams, Superior Court, Judicial District of Stamford/Norwalk at Stamford, Docket No. 132624 (March 14, 1994, Lewis, J.); Town of Westport v. 157Easton Road, Superior Court, Judicial District of Fairfield at Bridgeport, Docket No. 308031 (March 11, 1994, Vertefeuille, J.);City of New London v. University of Connecticut, Superior Court, Judicial District of New London at New London, Docket No. 529199 (February 24, 1994, Teller, J.); Kwiatkoski v. Johnson,10 Conn. L. Rptr. 311 (October 27, 1993, Vertefeuille, J.).
The defendants contend that the plaintiff has failed to CT Page 3759 exhaust his grievance and arbitration remedies under the SEA collective bargaining agreement, and therefore, the court is without subject matter jurisdiction to hear this claim.
"It is well settled under both federal and state law that, before resort to the courts is allowed, an employee must at least attempt to exhaust exclusive grievance and arbitration procedures, such as those contained in the collective bargaining agreement between the defendant and the plaintiff's union. . . . Failure to exhaust the grievance procedures deprives the court of subject matter jurisdiction." (Citations omitted; internal quotation marks omitted.) Labbe v. Pension Commission, 229 Conn. 801, 811,643 A.2d 1268 (1994).
The plaintiff argues that this action has been brought to enforce his rights under a separate contract, not under the collective bargaining agreement, and therefore, exhaustion of grievance and arbitration remedies under the collective bargaining agreement is not necessary. The plaintiff relies upon Cahill v.Board of Education, 187 Conn. 94, 444 A.2d 907 (1982) in which the court states that "a local board of education is bound by and may sue or be sued on contracts in the same manner as municipal corporations." Id., 102. In Cahill the plaintiff was suing on the collective bargaining agreement between the board of education and the teachers' union, and the defendant raised the issue of a lack of subject matter jurisdiction based upon a failure to exhaust administrative remedies. The court found this argument to be without merit because there was no grievance procedure which governed the facts at issue.
Accordingly, although Cahill allows a board of education to be sued on contracts, it does not stand for the proposition that the existence of such a contract allows a plaintiff to ignore available grievance and arbitration remedies. The plaintiff also offersSnyder v. Waterbury Board of Education, Superior Court, Judicial District of Waterbury, Docket No. 121828 (August 30, 1994, Sylvester, J.) in support. In Snyder the court determined, however, that the collateral agreement sued upon was not covered by statutory remedies under General Statutes § 10-151(f), and therefore, the court did not determine whether it fell under the remedies provided in a collective bargaining agreement.
The plaintiff previously filed a suit based upon the same facts at issue here, and made an application for a temporary injunction. The court, Nigro, J., in an opinion dated June 22, CT Page 3760 1992, denied the plaintiff's motion for a temporary injunction on the grounds of failure to exhaust administrative remedies and ripeness. The court also considered this same argument that the December 22, 1989 agreement is not covered by the collective bargaining agreement. Judge Nigro, in addressing this argument, stated that "the plaintiff claims he probably could not raise the issue of the alleged breach of his private agreement with the Stamford School System concerning the CIAC charges through the regular grievance procedures, since that agreement does not fit within the scope of a procedure which addresses circumstances where there has been `a violation, misinterpretation or misapplication of this [collective bargaining] agreement or of the rules, regulations, administrative directives or policies of the board.' However, if that agreement should be read, as the plaintiff would have it read, to mean that the allegations of CIAC violations and the penalties agreed to by the plaintiff can not be considered as a factor in assessing his possible appointment to a coaching position, that would certainly have to be considered a policy of the board."
The doctrine of the law of the case provides that "[w]here a matter has previously been ruled upon interlocutorily, the court in a subsequent proceeding in the case may treat that decision as the law of the case, if it is of the opinion that the issue was correctly decided, in the absence of some new or overriding circumstance." (Internal quotation marks omitted.) Suffield Bankv. Berman, 228 Conn. 766, 775, 639 A.2d 1033 (1994). Although the law of the case does not apply because this is a separate action, the principle of the law of the case is persuasive as the facts and issues in this action are identical to those decided previously. The plaintiff has not presented any additional argument or facts upon which the court could come to a conclusion contrary to the one arrived at by Judge Nigro.
In any event, the plaintiff also maintains that he has exhausted his remedies under the collective bargaining agreement on three of the occasions by taking his grievances to the fourth level, where the SEA declined to take them to arbitration, and that on two occasions the plaintiff has never been notified of the denial of his application. The plaintiff therefore contends that the grievance procedures are futile because the SEA has consistently taken a position adverse to the plaintiff. At the evidentiary hearing, the plaintiff testified to his attempts to exhaust the remedies under the collective bargaining agreement, the refusal of the union to take his grievances to arbitration, and the CT Page 3761 futility of the remedies.[1]
Nevertheless, the plaintiff has not pleaded, in count five, that he has exhausted his administrative remedies, and that questions exist as to whether the plaintiff has exhausted his remedies under the collective bargaining agreement, which reduces the likelihood that the plaintiff will prevail on his underlying claim.
The plaintiff's likelihood of success on the merits can also be analyzed through the plaintiff's argument that the defendants breached the agreement of December 22, 1989, by considering the alleged recruiting violations, and denying his applications on the basis of those allegations.
At the evidentiary hearing, the defendant Tucci testified that he makes recommendations to the superintendent as to who should be appointed to coaching positions and that the superintendent almost always follows his recommendations. In regard to the plaintiff, Tucci testified that if all things were equal, he would allow the alleged recruiting violations by the plaintiff to be considered in the decision of whether to appoint the plaintiff as a coach, and that it could be a determining factor in the decision.
Even though the defendants may have taken the alleged recruiting violations of the plaintiff into consideration, it is by no means certain that would constitute a breach of the December 22, 1989 agreement. The agreement provides that "[t]he administration of the Stamford Public Schools agrees not to discipline coach Michael Saccardi for alleged recruiting and other alleged violation of CIAC rules, except as set forth herein. . . . The execution of this agreement in no way constitutes any admission by Michael Saccardi of any recruiting violation." Using the allegations of recruiting violations in evaluating the plaintiff for open coaching positions would only be a violation of the December 22, 1989 agreement if such use is determined to be a disciplinary measure. Black's Law Dictionary defines discipline, as used in this context, as "[c]orrection, chastisement, punishment, penalty." While it is possible that consideration of the alleged recruiting violations could be considered a disciplinary measure, the court cannot determine that it is "likely" to be so considered by the finder of fact. As a general rule "[a] temporary injunction should not be granted where the plaintiff's legal rights are not clear or are doubtful." Town of Westport v. 157 Easton Road, supra. It is uncertain that a denial of the plaintiff's applications based upon CT Page 3762 the plaintiff's alleged recruiting violations would constitute a breach of the agreement.
Furthermore, the defendants argue that the plaintiff has not established that he would suffer irreparable harm because any injury suffered by the plaintiff can be redressed through monetary damages. The plaintiff contends that he is irreparably harmed by losing years of seniority every time he is denied a coaching position.
"[W]here an injury is of such a nature that it cannot be adequately compensated in damages, or cannot be measured by any pecuniary standard, it is irreparable. . . . The question of irreparable harm and availability of an adequate remedy at law are threshold issues which a trial court must first consider before it can determine whether injunctive relief is warranted." (Internal quotation marks omitted.) Sonenclar v. Barlag, supra. The plaintiff relies on New Haven Firebird Society v. Board of FireCommissioners, 32 Conn. App. 585, 630 A.2d 131 (1993) in which the court determined that illegal stockpiling of promotion lists foreclosed the promotion of others and issued an injunction. In this case, however, as discussed above, it is not certain that consideration of the alleged recruiting violations would constitute a breach of contract. Moreover, should it ultimately be determined that such consideration is a breach of contract, the plaintiff's injuries can be monetarily quantified. "It is well settled that an individual's loss of employment and wages, without more, does not constitute an irreparable injury for the reason that eventual receipt of back pay has been viewed as an adequate remedy at law." (Internal quotation marks omitted.) Espinosa v.Connecticut College, supra.
If the plaintiff can prove that he did not receive a position because of the consideration of the alleged recruiting violations, and that such consideration is a breach of the agreement dated December 22, 1989, then he will be able to recover damages in the form of lost wages. It is not certain that even if the court were to order that the alleged violations were not to be considered in the hiring decision, the defendant would automatically receive an appointment. Moreover, if such an injunction is tantamount to ordering the defendants to appoint the plaintiff to the next available coaching position, it is not suitable for a temporary injunction as injunctive relief is rarely granted to specifically enforce employment relationships. See Solomon v. Hall-BrookeFoundation, Superior Court, Judicial District of Fairfield at CT Page 3763 Bridgeport, Docket No. 213998 (February 11, 1992, Katz, J.).
"`It is clear that the power of equity to grant injunctive relief may be exercised only under demanding circumstances. . . . Restraining the action of an individual or a corporation by injunction is an extraordinary power always to be exercised with caution and never without the most satisfactory of reasons.'"Dunham v. Kistner, supra. The parties have not addressed the issue of the balancing of the equities, but, as has already been discussed, there is no way for the court to determine whether the issuance of such an injunction would in any way affect the status quo. Therefore, the equities are not visibly tilted toward either party.
The plaintiff has failed to meet the prerequisites for obtaining a temporary injunction. Moreover, even if the court were to grant the plaintiff's application it does not automatically translate into the plaintiff being appointed to a coaching position. As this is so, it is impossible for the court to know whether or not the injunction is being complied with, or whether the plaintiff was rejected for other reasons. Therefore, the enforcement of such an injunction would be problematic, at best, and futile at worst. Accordingly, the plaintiff's application for a temporary injunction is denied.
DEAN, J.