******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

Bright, Moll and Sullivan, Js.

*Syllabus*

The plaintiffs, coadministrators of the estate of the decedent, sought to
recover damages from the defendants, the town of Greenwich and its
board of education, for the wrongful death of the decedent, who commit-
ted suicide after being subjected to severe and continual bullying from
his classmates while he was enrolled in the town's public school system.
During that time, the board was mandated by statute ([Rev. to 2011]
§ 10-222d [as amended by Public Acts 2011, No. 11-232, § 1]) to develop
and implement a policy to address the issue of bullying in the public
school system. In compliance with the statute, the board adopted a
policy that, inter alia, required the board to appoint administrators and
specialists, who were responsible for the development and implementa-
tion of the policy, and provided detailed procedures for employees and
specialists to follow if they had knowledge of a bullying incident or if
a bullying incident had been reported. In their complaint, the plaintiffs
alleged that, despite being aware that the decedent was being subjected
to unremitting bullying, the board's administrators, supervisory person-
nel and other school employees failed to comply with the mandatory
provisions of the policy in numerous ways, that, in failing to do so, they
engaged in gross, reckless, wilful and wanton misconduct, which was
a substantial factor in causing the decedent's suicide, and that the board
was liable for the decedent's wrongful death and related damages. The
board filed a motion to strike the complaint on the ground that it was
entitled to sovereign immunity because it was acting as an agent of the
state when it allegedly failed to carry out its state mandated duties
under § 10-222d. The trial court denied the motion strike concluding,
inter alia, that the board was not entitled to sovereign immunity because
it was acting on behalf of the town, not the state, when it allegedly
failed to comply with the policy. On the board's appeal to this court,
*held* that the board could not prevail on its claim that the trial court
improperly concluded that it was not entitled to sovereign immunity
from the plaintiffs' wrongful death claim; the board was acting as an
agent of the town, not the state, when its employees allegedly failed to
comply with the terms of the policy that it had adopted in accordance
with § 10-222d, as the state action mandated by that statute begins and
ends with the development, implementation, submission and assessment
of the policy, and the claim that the board was entitled to sovereign
immunity was untenable in light of the qualified immunity specifically
provided to a local board of education pursuant to a related statute
(§ 10-222*l*) for actions taken by the board in connection with a policy
developed and implemented pursuant to § 10-222d, as that qualified
statutory immunity is irreconcilable with the complete protection from
suit afforded by sovereign immunity, and there would have been no
need for the legislature to create limited statutory immunity for local
boards of education of those boards already were protected by sover-
eign immunity.

Argued May 25—officially released August 14, 2018

*Procedural History*

Action to recover damages for the wrongful death of
the plaintiffs' decedent as a result of, inter alia, the
defendants' alleged gross misconduct, brought to the
Superior Court in the judicial district of Stamford-Nor-
walk, where the court, *Jacobs, J.*, denied the defendants'
motion to strike, and the defendant Board of Education

of the Town of Greenwich appealed to this court. *Affirmed.*

*Brett R. Leland*, pro hac vice, with whom were *Harold J. Friedman*, pro hac vice, and *Fernando F. De Arango*, for the appellant (defendant Board of Education of the Town of Greenwich).

*David S. Golub*, with whom were *Jennifer Goldstein* and, on the brief, *Jonathan M. Levine*, for the appellees (plaintiffs).

*Opinion*

BRIGHT, J. In this wrongful death action, the defendant, Board of Education of the Town of Greenwich,[1] appeals from the judgment of the trial court denying its motion to strike[2] the first count of the operative complaint filed by the plaintiffs, Anna Izabela Palosz and Franciszek Palosz, coadministrators of the estate of Bartlomiej F. Palosz (decedent), which stems from the decedent's tragic suicide. On appeal, the defendant claims that the court improperly concluded, as a matter of law, that it is not entitled to sovereign immunity from the plaintiffs' wrongful death claim, in which the plaintiffs allege, in part, that the defendant's employees failed to comply with the antibullying policy that the defendant developed and implemented pursuant to General Statutes (Rev. to 2011) § 10-222d, as amended by Public Acts 2011, No. 11-232, § 1.[3] We affirm the judgment of the trial court.

In count one of the operative amended complaint[4] (complaint), the plaintiffs allege the following relevant facts. The defendant serves as the agent of the town of Greenwich to maintain control of all of the public schools in Greenwich, which include Western Middle School and Greenwich High School. On August 27, 2013, after being subjected to unremitting bullying for several years in the Greenwich public school system, the decedent died by suicide on the first day of his sophomore year at Greenwich High School. At the time of his death, the decedent was fifteen years old and had been a student enrolled in the Greenwich public school system for seven years.

Throughout those years, the defendant was mandated by § 10-222d to develop and implement a safe school climate plan to address the existence of bullying in the Greenwich public school system. In compliance with this statutory mandate, the defendant adopted the "Whole Student Development Policy" (policy) in April, 2009, which later was strengthened in July, 2012. The policy requires that the defendant appoint administrators and specialists who are responsible for the development and implementation of the policy. The policy further mandates an employee who has knowledge of a bullying incident to notify, by an oral report, the specialist or another school administrator within one school day and to file a written report not later than two school days after such verbal notification. Upon receipt of a report, the policy requires the specialist to investigate, or to supervise the investigation of, the bullying incident. If the acts of bullying are verified, the policy requires the specialist or designee to develop a student safety plan to protect against further bullying, to notify the parents of the students involved not later than forty-eight hours following the completion of the investigation, and to invite the parents to a meeting to discuss the measures being taken to intervene. If there

are repeated instances of bullying against a single individual, the policy requires the development of a specific written intervention plan. Moreover, the policy mandates that any students who engage in bullying behavior be subject to school discipline. In addition to the written policy provisions, the defendant has oral policies and procedures that require school employees to intervene to protect students from being bullied repeatedly.

During the time in which the policy was effective, the decedent was subjected to severe and continual verbal and physical bullying by his fellow classmates. Greenwich school employees, including supervisory employees, were "long aware" that the decedent was being subjected to such bullying. Despite being aware of said bullying, the defendant's administrators, and supervisory personnel, and other school employees[5] did not comply with the mandatory provisions of the policy in that they failed to: report the repeated instances of bullying to the specialist or other school administrator orally and/or in writing within the required timeframes; investigate the repeated incidents of bullying; notify the parents of the findings of any such investigation; meet with the parents to communicate appropriate remedial measures being taken by the school to ensure the decedent's safety and to prevent further acts of bullying; develop a student safety support plan in response to all verified acts of bullying with safety measures to protect against further acts of bullying; develop a specific written intervention plan to address the repeated instances of bullying; direct appropriate discipline to the student or students who bullied the decedent; and properly oversee and implement the provisions of the policies and procedures.

The plaintiffs further allege that the defendant and its administrators, supervisory personnel, and other school employees, in failing to comply with the policy requirements, engaged in "gross, reckless, wilful or wanton misconduct," which was a substantial factor in causing the decedent's death by suicide. On the basis of the foregoing, the plaintiffs allege that the defendant is liable, pursuant to General Statutes § 52-557n,[6] for the wrongful death of the decedent and for the related damages caused by the defendant and its administrators, supervisory personnel, and other school employees.

On July 6, 2016, the defendant filed a motion to strike the complaint.[7] The defendant argued, in relevant part, that it is entitled to sovereign immunity because it was acting as an agent of the state when it allegedly "failed to carry out its state mandated duties under the antibullying statute . . . § 10-222d et seq." Following a hearing, the court issued a memorandum of decision, dated March 21, 2017, denying the defendant's motion to strike. The court held that the defendant is not entitled to sovereign immunity because it was acting on behalf

of the municipality, as opposed to the state, when it failed to comply with the policy. The court also held that there is no sovereign immunity protection for the defendant and its employees when their actions or omissions constitute gross, reckless, wilful, or wanton misconduct because the qualified immunity provided to them by General Statutes § 10-222*l*[8] specifically limits sovereign immunity in that regard. This appeal followed.

We begin by setting forth the standard of review and legal principles that govern our resolution of this appeal. Notwithstanding the fact that the issue of sovereign immunity was presented to the court by way of a motion to strike, as opposed to a motion to dismiss,[9] "[s]overeign immunity relates to a court's subject matter jurisdiction over a case, and therefore presents a question of law over which we exercise de novo review. . . . In so doing, we must decide whether [the court's] conclusions are legally and logically correct and find support in the facts that appear in the record." (Internal quotation marks omitted.) *Columbia Air Services, Inc.* v. *Dept. of Transportation*, 293 Conn. 342, 349, 977 A.2d 636 (2009).

In Connecticut, "[w]e have long recognized the common-law principle that the state cannot be sued without its consent. . . . The doctrine of sovereign immunity protects the state, not only from ultimate liability for alleged wrongs, but also from being required to litigate whether it is so liable." (Internal quotation marks omitted.) *Henderson* v. *State*, 151 Conn. App. 246, 256, 95 A.3d 1 (2014). "The protection afforded by this doctrine has been extended to agents of the state acting in its behalf. . . . Town boards of education, although they are agents of the state responsible for education in the towns, are also agents of the towns and subject to the laws governing municipalities." (Citations omitted.) *Cahill* v. *Board of Education*, 187 Conn. 94, 101, 444 A.2d 907 (1982). "[O]ur jurisprudence has created a dichotomy in which local boards of education are agents of the state for some purposes and agents of the municipality for others. . . . To determine whether the doctrine of sovereign immunity applies to a local school board, we look to whether the action would operate to control or interfere with the activities of the state . . . ." (Citation omitted; internal quotation marks omitted.) *Purzycki* v. *Fairfield*, 244 Conn. 101, 112, 708 A.2d 937 (1998), overruled on other grounds by *Haynes* v. *Middletown*, 314 Conn. 303, 323, 101 A.3d 249 (2014); see also *Cahill* v. *Board of Education*, supra, 101–102 (local school board not entitled to sovereign immunity from claim of breach of employment contract because such action would not operate to control state's activities or subject it to liability).

Consistent with the foregoing, our Supreme Court specifically has held that "[a] local board of education

acts as an agent of the *state* when it performs those duties delegated to it by the state. . . . A board of education acts as an agent of its respective *municipality* when it performs those functions originally entrusted by the state to the municipality that the municipality has subsequently delegated to the board of education . . . ." (Citations omitted; emphasis added; internal quotation marks omitted.) *Board of Education* v. *New Haven*, 237 Conn. 169, 181, 676 A.2d 375 (1996). For example, a local board of education acts as an agent of the state when it furnishes an education for the public pursuant to General Statutes § 10-220. See *Cheshire* v. *McKenney*, 182 Conn. 253, 257–58, 438 A.2d 88 (1980). Conversely, a local board of education acts as an agent of the municipality when it maintains control over the public schools within the municipality's limits pursuant to General Statutes § 10-240. Id., 258; see *Purzycki* v. *Fairfield*, supra, 244 Conn. 103–105, 112 (local board of education not entitled to sovereign immunity from claim that child tripped in hallway notwithstanding existence of related "policies, rules and regulations promulgated by school officials" because "duty to supervise students is performed for the benefit of the municipality").

On appeal, the defendant maintains that § 10-222d deputizes local boards of education as agents of the state to carry out and effect the state's public policy, imposes specific duties upon the local boards of education, and subjects them to ongoing state oversight and control. Thus, the defendant argues that it was acting as an agent of the state when it failed to comply with the policy adopted pursuant to § 10-222d.[10] The defendant also contends that the qualified statutory immunity specifically provided by § 10-222*l* does not waive sovereign immunity.[11] We are not persuaded.

Section 10-222d (b) provides in relevant part: "Each local and regional board of education shall develop and implement a safe school climate plan to address the existence of bullying in its schools. . . ." Subsection (b) mandates that each plan "shall" contain certain particularized requirements, each of which is designated in subdivisions (1) through (17). These requirements, generally, enable the reporting of instances of bullying, mandate school officials to forward and investigate these reports to a specialist, who would then notify the parents of the students, and direct the adoption of a comprehensive prevention and intervention strategy. Section 10-222d (c) provides in relevant part: "[E]ach local and regional board of education shall approve the safe school climate plan developed pursuant to this section and submit such plan to the Department of Education . . . ." Section 10-222d (d) compels each board of education to require each school in the district to complete and submit an assessment of its policy to the Department of Education pursuant to General Statutes § 10-222h.

The plaintiffs do not dispute that a local board of education acts as an agent of the state when it develops and implements a policy, submits the policy to the Department of Education, or mandates that each school submit an assessment to the Department of Education, pursuant to the requirements of § 10-222d. The plaintiffs do not claim that the defendant failed to comply with any of these requirements. In fact, the plaintiffs specifically allege that the defendant complied with the development and implementation mandates of § 10-222d.[12] Instead, the gravamen of the plaintiffs' complaint is their allegation that the wrongful death of the decedent was caused by the defendant because its employees failed to comply with *the terms of the policy* that it had developed and implemented pursuant to § 10-222d. The narrow issue presented, therefore, is whether the defendant was acting as an agent of the state when its employees allegedly failed to comply with the terms of the policy that the defendant adopted in accordance with § 10-222d. We conclude that it was not.

The state action mandated by § 10-222d begins and ends with the development, implementation, submission, and assessment of the policy. Holding the defendant liable for its employees' alleged tortious conduct in failing to execute properly the terms of the policy it developed and implemented, however, does not operate to control or interfere with the activities of the state. Rather, the defendant acts as an agent of the municipality when it enforces and complies with the policy pursuant to its general powers of control over public schools, which is explicitly delegated to a local board of education through the municipality pursuant to § 10-240. Section 10-240 provides: "Each town shall through its board of education maintain the control of all the public schools within its limits and for this purpose shall be a school district and shall have all the powers and duties of school districts, except so far as such powers and duties are inconsistent with the provisions of this chapter." It is pursuant to this broad mandate of control, and not through § 10-222d, that a board of education polices the behavior of its students and, accordingly, enforces and complies with the policy. When the delegations of §§ 10-222d and 10-240 are read together, it becomes apparent that the mandate of § 10-222d does not go so far as to encroach upon the general powers of control delegated to the towns by § 10-240. Therefore, we conclude that the defendant was acting as an agent of the municipality, and not the state, when its employees allegedly failed to comply with the policy it had adopted.

Additionally, the defendant's position that it is entitled to sovereign immunity is undercut by the qualified statutory immunity specifically provided by § 10-222*l* to a local board of education for actions taken in connection with a policy developed and implemented pur-

suant to § 10-222d. In particular, § 10-222*l* (c) provides in relevant part: "No claim for damages shall be made against a local or regional board of education that implements the safe school climate plan, described in Section 10-222d, and reports, investigates and responds to bullying . . . if such local or regional board of education was acting in good faith in the discharge of its duties. The immunity provided in this subsection does not apply to acts or omissions constituting gross, reckless, wilful or wanton misconduct." Section 10-222*l* was adopted in 2011, nine years after § 10-222d was first enacted.

The qualified statutory immunity provided by § 10-222*l* is irreconcilable with the complete protection from suit afforded by the doctrine of sovereign immunity and contradictory to the presumption of legislative uniformity. As outlined previously in this opinion, "[t]he doctrine of sovereign immunity protects the state, not only from ultimate liability for alleged wrongs, but also from being required to litigate whether it is so liable." (Internal quotation marks omitted.) *Henderson* v. *State*, supra, 151 Conn. App. 256. Moreover, "[i]t is axiomatic that the legislature is presumed to be aware of the common law when it enacts statutes. . . . [T]he legislature is always presumed to have created a harmonious and consistent body of law . . . [and] to be aware of prior judicial decisions involving common-law rules . . . ." (Citation omitted; internal quotation marks omitted.) *Pacific Ins. Co.*, *Ltd.* v. *Champion Steel*, *LLC*, 323 Conn. 254, 265, 146 A.3d 975 (2016). "Furthermore, [w]e presume that laws are enacted in view of existing statutes . . . ." (Internal quotation marks omitted.) *Southington* v. *Commercial Union Ins. Co.*, 254 Conn. 348, 357, 757 A.2d 549 (2000). Accordingly, we presume that the legislature enacted § 10-222*l* with the knowledge of the long-standing doctrine of sovereign immunity and of § 10-222d.

On the basis of the foregoing, we conclude that there would have been no need for the legislature to create a limited statutory immunity for local boards of education if those boards already were protected by sovereign immunity. This is particularly true given that § 10-222*l* was adopted in 2011, nine years after § 10-222d was first enacted, and after a number of conflicting decisions had been rendered in the Superior Court.[13] Had the legislature agreed with those cases that held that sovereign immunity barred claims like the one presented in this case, § 10-222*l* would have been unnecessary. It makes more sense that the legislature concluded instead that § 10-222*l* was necessary because local boards of education are not protected by sovereign immunity when their employees fail to comply with an antibullying policy.

Put another way, if, as the defendant contends, a board of education has sovereign immunity from suit

predicated on its noncompliance with the policy mandated to be adopted by § 10-222d, then the provision of qualified statutory immunity, by virtue of § 10-222*l*, for the same noncompliance, would be superfluous. Likewise, it would be illogical to conclude that a board of education is entitled to sovereign immunity from the claims posited in the present case when § 10-222*l* makes it clear that a board of education may be subject to tortious liability in certain prescribed circumstances. Consequently, the defendant's claim that it is entitled to sovereign immunity is untenable in light of the qualified statutory immunity provided by § 10-222*l*.[14]

In sum, we conclude that the defendant is not entitled to sovereign immunity from the plaintiffs' wrongful death claim, in which the plaintiffs allege, in part, that the defendant's employees failed to comply with the antibullying policy. Accordingly, the court properly denied the defendant's motion to strike the plaintiffs' complaint.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The town of Greenwich is also a defendant in this action, but it is not a party to this appeal. Accordingly, we refer to the Board of Education of the Town of Greenwich as the defendant.

[2] Although the denial of a motion to strike is interlocutory and, thus, generally not a final judgment for purposes of appeal; *White* v. *White*, 42 Conn. App. 747, 749, 680 A.2d 1368 (1996); the denial of a motion filed on the basis of a colorable claim of sovereign immunity is an immediately appealable final judgment. *Shay* v. *Rossi*, 253 Conn. 134, 167, 749 A.2d 1147 (2000), overruled in part on other grounds by *Miller* v. *Egan*, 265 Conn. 301, 828 A.2d 549 (2003). On June 23, 2017, the plaintiffs filed a motion to dismiss this appeal on the ground that there is no "colorable basis" for the defendant's sovereign immunity claim, which was denied by this court on September 7, 2017.

[3] General Statutes (Rev. to 2011) § 10-222d (b), as amended by Public Acts 2011, No. 11-232, § 1, provided in relevant part: "Each local and regional board of education shall develop and implement a safe school climate plan to address the existence of bullying in its schools. . . ." The alleged tortious conduct of the defendant's employees began prior to 2011, and continued after 2011, and the plaintiffs' claims do not involve the specific requirements of that statute. Accordingly, all references to § 10-222d in this opinion are to the 2011 revision, as amended by No. 11-232 of the 2011 Public Acts.

[4] The plaintiffs filed their original complaint on August 17, 2015. On May 6, 2016, the plaintiffs filed an amended complaint in two counts, both of which sound in wrongful death. Count one is addressed to the defendant; count two is addressed to the town of Greenwich. On May 25, 2016, the plaintiffs filed an amendment to the amended complaint, which revised two paragraphs in each count. Accordingly, the operative complaint is the May 6, 2016 amended complaint, as partially revised by the May 25, 2016 amendment.

[5] Although they do not utilize the talismanic phrasing, the plaintiffs' allegations are framed in vicarious liability against the defendant for the actions of its employees.

[6] General Statutes § 52-557n (a) (1) provides in relevant part: "Except as otherwise provided by law, a political subdivision of the state shall be liable for damages to person or property caused by: (A) The negligent acts or omissions of such political subdivision or any employee, officer or agent thereof acting within the scope of his employment or official duties . . . ."

[7] The defendant and the town of Greenwich filed a joint motion to strike on four grounds. In the first ground, which is at issue in the present appeal, the defendant argued that it is entitled to sovereign immunity. The second, third, and fourth grounds, which contested the legal sufficiency of the complaint based upon §§ 52-557 and 10-222d, are not at issue on appeal.

[8] Even though it is ultimately immaterial, the court relied upon § 10-222*l*

(a), instead of § 10-222*l* (c). The import of both subsections is congruent, however; subsection (a) applies to claims made against school employees, and subsection (c) applies to claims made against a board of education. In light of the fact that this action is brought against a board of education, we rely on § 10-222*l* (c), which provides in relevant part: "No claim for damages shall be made against a local or regional board of education that implements the safe school climate plan, described in Section 10-222d, and reports, investigates and responds to bullying . . . if such local or regional board of education was acting in good faith in the discharge of its duties. The immunity provided in this subsection does not apply to acts or omissions constituting gross, reckless, wilful or wanton misconduct."

[9] See *Bruno* v. *Travelers Cos.*, 172 Conn. App. 717, 723 n.6, 161 A.3d 630 (2017) (explaining distinction between motion to strike and motion to dismiss); see also *Lane* v. *Cashman*, 179 Conn. App. 394, 423, 180 A.3d 13 (2018) (when issue raised by motion to strike concerns trial court's subject matter jurisdiction, we view and review court's ruling on motion as one made in connection with motion to dismiss).

[10] The decisions of the Superior Court are split as to whether a local board of education is entitled to sovereign immunity when it acts, or fails to act, in connection with the prevention of bullying in public schools. The defendant relies upon the following cases to support its position that it is entitled to sovereign immunity: *Wells* v. *Stoval*, Superior Court, judicial district of New Haven, Docket No. CV-10-5032978-S (June 25, 2013) (sovereign immunity protects local board of education for its failure to notify parents of bullied student, pursuant to § 10-222d, because that statute imposes state mandated activities); *Roach* v. *First Student Transportation, LLC*, Superior Court, judicial district of New Haven, Docket No. CV-10-6007924-S (August 18, 2010) (50 Conn. L. Rptr. 517) (in determining whether § 10-222d imposes duty of care upon school bus operator, court held that local board of education acts as agent of state when *creating* antibullying policy pursuant to § 10-222d and that "legislative intent was . . . not to impose punishment on the board, or its agents, for the violation of that policy"); *Antalik* v. *Board of Education*, Superior Court, judicial district of Litchfield, Docket No. CV-07-5001762-S (August 13, 2008) (46 Conn. L. Rptr. 179) (sovereign immunity protects local board of education because it was acting pursuant to state mandated activity when it failed to implement and follow antibullying policy adopted pursuant to § 10-222d); *Santoro* v. *Hamden*, Superior Court, judicial district of New Haven, Docket No. CV-04-0488583-S (August 18, 2006) (sovereign immunity protects local board of education because it acted as an agent of state when it failed to provide "equal educational opportunities" through its failure to prevent bullying in public schools, and § 10-222d does not waive sovereign immunity or create private cause of action).

Conversely, the plaintiffs rely upon the following cases to bolster their argument that the defendant is not entitled to sovereign immunity: *Lopez* v. *Bridgeport*, Superior Court, judicial district of Fairfield, Docket No. CV-15-6051932-S (June 27, 2016) (62 Conn. L. Rptr. 593) (sovereign immunity does not protect local board of education because it acts on behalf of municipality when it provides a "safe school setting" pursuant to § 10-220); *Rajeh* v. *Board of Education*, Superior Court, judicial district of New Haven, Docket No. CV-14-6049904-S (June 7, 2016) (62 Conn. L. Rptr. 512) (sovereign immunity does not protect local board of education because it acts as agent of the municipality, not the state, when it fails to prevent bullying); *Hernandez* v. *Board of Education*, Superior Court, judicial district of Ansonia-Milford, Docket No. CV-09-5010484-S (June 7, 2013) (56 Conn. L. Rptr. 311) (sovereign immunity does not protect local board of education for its failure to comply with antibullying policy because § 10-222d does not control or interfere with state and "[m]aintaining a safe school is done for the benefit of the municipality, not the state"); *Straiton* v. *Board of Education*, Superior Court, judicial district of Danbury, Docket No. CV-10-6003255-S (March 13, 2012) (sovereign immunity does not protect local board of education for its failure to prevent bullying because it acts as agent of municipality when it supervises and maintains control of premises for protection of students); *Esposito* v. *Bethany*, Superior Court, judicial district of New Haven, Docket No. CV-06-5002923-S (February 14, 2007) (43 Conn. L. Rptr. 7) (sovereign immunity does not protect local board of education for its failure to prevent bullying because duty to supervise students is performed for benefit of municipality).

[11] The defendant contends that the qualified statutory immunity provided by § 10-222*l* does not waive sovereign immunity. The defendant's argument

misconstrues the plaintiffs' reliance on § 10-222*l*. The plaintiffs do not claim that § 10-222*l* waives sovereign immunity; instead, they argue that the existence of the limited statutory immunity in § 10-222*l* confirms that there is no sovereign immunity for the failure to execute properly or to comply with a plan developed and implemented pursuant to § 10-222d. For the reasons discussed later in this opinion, we agree with the plaintiffs.

[12] To the extent that the defendant endeavors to characterize the plaintiffs' allegations as claiming that it directly violated the provisions of § 10-222d, we disagree. Construing the plaintiff's complaint broadly and realistically, as we must; see *Byrne* v. *Avery Center for Obstetrics & Gynecology, P.C.*, 314 Conn. 433, 462, 102 A.3d 32 (2014); their complaint clearly alleges a violation of the policy, not the statute.

[13] With one exception, all of the Superior Court decisions relied on by the defendant were decided prior to the enactment of § 10-222*l*; see footnote 10 of this opinion; the only decision cited by the defendant that was decided after 2011; *Wells* v. *Stoval*, supra, Superior Court, Docket No. CV-10-5032978-S; makes no mention of § 10-222*l*.

[14] The defendant attempts to reconcile the language of § 10-222*l* with its claim of sovereign immunity by arguing that § 10-222*l* is intended to limit what claims a plaintiff can pursue if the Claims Commissioner waives sovereign immunity. Of course, that is not what the statute says. In fact, the statute makes no reference to the Claims Commissioner at all. We will not torture the plain wording of a statute to impart a meaning not expressed by its unambiguous language. See *State* v. *Smith*, 148 Conn. App. 684, 700–701, 86 A.3d 498 (2014), aff'd, 317 Conn. 338, 118 A.3d 49 (2015).

———————————————