******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# ASHLEY NORRIS ET AL. *v.* TOWN OF TRUMBULL ET AL.
## (AC 40094)

Alvord, Prescott and Eveleigh, Js.

*Syllabus*

The plaintiffs, B and her daughter A, sought to recover damages for personal injuries from the defendant regional educational service center, which was established pursuant to statute (§ 10-66a et seq.), in connection with an incident in which A, a special needs student, was injured while attending a school operated and managed by the defendant. The defendant filed a motion to dismiss the only count of the complaint that was directed against it, which alleged negligence, claiming that, as a regional educational service center, under § 10-66c it was an agent of the state and, therefore, had sovereign immunity in an action for money damages absent a proper waiver of sovereign immunity. The trial court denied the defendant's motion to dismiss, and the defendant appealed to this court. The defendant claimed that the trial court improperly determined that the defendant's role in supervising students committed to its care and custody was a municipal function that was not shielded by the doctrine of sovereign immunity. *Held* the trial court properly denied the defendant's motion to dismiss, as the defendant acted as an agent of its constituent municipal boards of education, and not the state, when overseeing the care and safety of children enrolled in its schools and programs, and, thus, it could not invoke the doctrine of sovereign immunity in this negligence action: the criteria set forth by our Supreme Court in *Gordon* v. *H.N.S. Management Co.* (272 Conn. 81) for determining when an entity properly can assert a sovereign immunity defense weighed against concluding that the defendant acted as an arm of the state with respect to any duty it may have had to supervise A, as a careful reading of the enabling legislation revealed that the defendant was not created by statute and that the legislature merely authorized boards of education in interested municipalities to join together to create a regional educational service center, the statutory language did not support a conclusion that the legislature intended for entities like the defendant to be treated like a state agent for all purposes, the fact that the legislation authorized the defendant's board to act on behalf of the state was not itself dispositive of whether the legislature also intended to treat the defendant as a state agency, entitled to all the rights and privileges of the state, including sovereign immunity, and nothing in the enabling legislation expressly states or of necessity implies that regional educational service centers such as the defendant stand in any different position than the municipalities that formed them and entrusted their students to them; moreover, indirect state funding did not make regional educational service centers, like the defendant, financially dependent on the state, as it was clear from the record presented and the defendant's admissions that the local municipal board, not the state, was directly responsible for much of the funding provided to the defendant for its services, and the defendant's constitution and bylaws made clear that it was governed by a representative council made up of members from its constituent local boards of education, and that no one from the state Board of Education or any other state functionaries were officers, directors, or trustees of the defendant, or were involved in the operation of the defendant's programs and services; furthermore, nothing in the record indicated that the state had any direct oversight or control over the defendant, its property or its operations other than to conduct an annual audit of finances and evaluation of programs and services, there was no requirement in the defendant's bylaws that budgets, expenditures or appropriations be reported to the state Board of Education for approval or that the state closely monitor its day-to-day operations at regional educational service centers, and a judgment against the defendant would not have a direct adverse effect on the state.

Argued October 18, 2018—officially released January 15, 2019

Action to recover damages for personal injuries sustained as a result of, inter alia, the defendants' negligence, and for other relief, brought to the Superior Court in the judicial district of Fairfield; thereafter, the action was withdrawn as against the defendant town of Trumbull et al.; subsequently, the court, *Radcliffe, J.*, granted the motion for summary judgment filed by the defendant city of Bridgeport et al.; thereafter, the court denied the motion to dismiss filed by the defendant Cooperative Educational Services, and the defendant Cooperative Educational Services appealed to this court. *Affirmed.*

*Ashley A. Noel*, with whom, on the brief, was *Timothy R. Scannell*, for the appellant (defendant Cooperative Educational Services).

*Kenneth J. Bartschi*, with whom were *Brendon P. Levesque* and, on the brief, *Jeffrey D. Lynch*, for the appellees (plaintiffs).

*Opinion*

PRESCOTT, J. The sole issue raised in this appeal is whether a regional educational service center established, pursuant to General Statutes § 10-66a et seq., by four or more municipal boards of education is entitled to invoke sovereign immunity in a negligence action brought by a special needs student injured while attending a school operated and managed by the regional educational service center. The defendant Cooperative Educational Services[1] appeals from the trial court's denial of its motion to dismiss on sovereign immunity grounds that portion of the operative complaint filed against it by the plaintiffs, Ashley Norris, a minor child acting through her mother and next friend, Bonita Wiggins, and Bonita Wiggins individually.[2] The defendant claims that the court improperly determined that the defendant's role in supervising students committed to its care and custody is a municipal function that is not shielded by the doctrine of sovereign immunity. We disagree and conclude that the court properly denied the defendant's motion to dismiss. Accordingly, we affirm the judgment of the trial court.

The following facts, as alleged in or necessarily implied from the plaintiffs' complaint, and procedural history are relevant to our resolution of the defendant's claim. On April 25, 2013, the minor plaintiff was enrolled at a school for children with special needs located in Trumbull and operated by the defendant, a regional educational service center established pursuant to § 10-66a. The school's staff was aware that, for her safety, the minor plaintiff needed to wear a gait belt at all times.[3] That day, however, the minor plaintiff, who was participating in an activity being run and monitored by the school, was walking with a staff member in the school's parking lot without her gait belt on when she suffered a seizure and fell to the ground, striking her face.

On February 20, 2015, the plaintiffs commenced the underlying action. The operative revised complaint was filed on August 17, 2015. Count three was the sole count directed against the defendant and sounded in negligence. According to the plaintiffs, the minor plaintiff fell due to the carelessness and negligence of the defendant, which allegedly had failed to take necessary precautions to properly supervise and ensure the safety of students in its care.[4] The plaintiffs alleged that, as a result of the defendant's negligence, the minor plaintiff suffered physical and emotional injuries, and that Wiggins was required to expend personal funds for her child's medical care. The defendant filed an answer denying all of the allegations of negligence.

On September 13, 2016, the defendant filed a motion to dismiss count three of the complaint on the ground that the court lacked subject matter jurisdiction over

the claims against it. Specifically, the defendant argued that, as a regional educational service center created pursuant to § 10-66a, it is a state agent and, therefore, has sovereign immunity in an action for money damages absent a proper waiver of sovereign immunity.[5] Attached to the motion to dismiss was an affidavit from the defendant's executive director averring that the defendant was one of six regional education service centers established in this state in accordance with the provisions of § 10-66a. Also attached were copies of the defendant's constitution and governing bylaws.[6]

The plaintiffs filed an objection to the motion to dismiss on November 10, 2016, arguing that sovereign immunity did not apply to the defendant under the circumstances alleged. According to the plaintiffs, a review of the statutory scheme governing regional education service centers shows that those entities are not state agencies and do not act as agents for the state when overseeing children entrusted to their care. They instead, according to the plaintiffs, are separate and independent corporations formed by municipalities. Furthermore, the plaintiffs noted that amongst the enumerated powers given to the regional educational service centers by § 10-66c is the power "to sue and be sued," which evinces a legislative intent that they are not state agencies shielded by sovereign immunity.

The court, *Radcliffe, J.*, issued a memorandum of decision on January 30, 2017, denying the defendant's motion to dismiss. The court reasoned that after a regional education service center is formed by its constituent municipal or regional boards of education, it exists pursuant to § 10-66c (a) as a " 'body corporate and politic,' rather than as an agency of state government." More particularly, the court explained that "[b]ecause [the defendant] is governed by a board of directors chosen by the member boards of education, and accepts students from the boards of education, its actions regarding enrolled students are in lieu of the municipality in which the affected student resides. [The defendant] performs functions, and assumes responsibilities as to a given student, which would otherwise be those of the local or regional board of education."

The court acknowledged that sovereign immunity protections have been extended to entities that act on behalf of the state, and that the furnishing of public education is a state function. It noted, however, that municipal boards of education, despite being entrusted to perform a state function with respect to education, nevertheless act as an agent of its municipality, not the state, when performing that function and, thus, are not protected by sovereign immunity. Because the court concluded that a regional educational service center's role in the care and supervision of students entrusted to it is directly analogous to the role performed by local or regional boards of education, the court concluded

that regional educational service centers similarly cannot invoke sovereign immunity.[7] Although the court acknowledged that at least one other Superior Court considering the same issue had reached a contrary conclusion, it nonetheless held that "[i]n the absence of any appellate authority, sovereign immunity will not be permitted to bar an action against a 'body corporate and politic,' charged with the care and custody of students by local boards of education, under circumstances in which the General Assembly has explicitly provided for the ability of the regional educational center to 'sue and be sued.' " This appeal followed.

The defendant claims on appeal that the trial court improperly determined that the defendant was not entitled to invoke sovereign immunity. According to the defendant, express language exists in § 10-66c that demonstrates that the defendant operates as an agent of the state in fulfilling a state-mandated duty to provided special education services to the minor plaintiff and, therefore, sovereign immunity applies. We disagree. Like the trial court, we conclude that, for the purposes of this type of negligence action, the defendant was not acting as a state agent and, therefore, is not entitled to the protections of sovereign immunity.

We begin with our standard of review and other applicable principles of law. A motion to dismiss is the proper vehicle to assert lack of jurisdiction over the subject matter. Practice Book § 10-30 (a) (1). "[T]he doctrine of sovereign immunity implicates subject matter jurisdiction and is therefore a basis for granting a motion to dismiss." (Internal quotation marks omitted.) *Bacon Construction Co.* v. *Dept. of Public Works*, 294 Conn. 695, 706, 987 A.2d 348 (2010). "[O]ur review of the trial court's ultimate legal conclusion and resulting [denial] of the motion to dismiss [is] de novo." (Internal quotation marks omitted.) Id. Furthermore, to the extent that we are called upon to engage in statutory interpretation, such review is also plenary.[8] See *Gonzalez* v. *O & G Industries, Inc.*, 322 Conn. 291, 302, 140 A.3d 950 (2016).

"When [deciding] a jurisdictional question raised by a pretrial motion to dismiss on the basis of the complaint alone, [a court] must consider the allegations of the complaint in their most favorable light. . . . In this regard, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader. . . .

"In contrast, if the complaint is supplemented by undisputed facts established by [1] affidavits submitted in support of the motion to dismiss . . . [2] other types of undisputed evidence . . . and/or [3] public records of which judicial notice may be taken . . . the trial court, in determining the jurisdictional issue, may consider these supplementary undisputed facts and need not conclusively presume the validity of the allegations

of the complaint. . . . Rather, those allegations are tempered by the light shed on them by the [supplementary undisputed facts]. . . . If affidavits and/or other evidence submitted in support of a defendant's motion to dismiss conclusively establish that jurisdiction is lacking, and the plaintiff fails to undermine this conclusion with counteraffidavits . . . or other evidence, the trial court may dismiss the action without further proceedings. . . . If, however, the defendant submits either no proof to rebut the plaintiff's jurisdictional allegations . . . or only evidence that fails to call those allegations into question . . . the plaintiff need not supply counteraffidavits or other evidence to support the complaint, but may rest on the jurisdictional allegations therein."

"Finally, where a jurisdictional determination is dependent on the resolution of a critical factual dispute, it cannot be decided on a motion to dismiss in the absence of an evidentiary hearing to establish jurisdictional facts. . . . Likewise, if the question of jurisdiction is intertwined with the merits of the case, a court cannot resolve the jurisdictional question without a hearing to evaluate those merits. . . . An evidentiary hearing is necessary because a court cannot make a critical factual [jurisdictional] finding based on memoranda and documents submitted by the parties." (Citations omitted; emphasis omitted; footnotes omitted; internal quotation marks omitted.) *Conboy* v. *State*, 292 Conn. 642, 651–54, 974 A.2d 669 (2009).

In the present appeal, in addition to the factual allegations in the complaint, the following documents were appended to the defendant's motion to dismiss: (1) a copy of the defendant's constitution, (2) a copy of the defendant's governing bylaws and (3) an affidavit from the defendant's executive director. The plaintiffs never challenged the authenticity of these submissions in their opposition to the motion to dismiss or at the hearing on the motion, nor did they attach any counteraffidavit or other evidentiary submissions of their own. Neither party asked the trial court to conduct an evidentiary hearing in order to establish additional jurisdictional facts, nor do they claim on appeal that an evidentiary hearing was necessary in this case. Thus, in conducting our de novo review, we limit ourselves to the factual record as it existed before the trial court, supplemented by any additional records of which we may take judicial notice. See *Conboy* v. *State*, supra, 292 Conn. 653–54.

Turning to the substance of the issue before us, "[i]n Connecticut, [w]e have long recognized the common-law principle that the state cannot be sued without its consent. . . . The doctrine of sovereign immunity protects the state, not only from ultimate liability for alleged wrongs, but also from being required to litigate whether it is so liable. . . . The protection afforded by this doctrine has been extended to agents of the state

acting in its behalf." (Citation omitted; internal quotation marks omitted.) *Palosz* v. *Greenwich*, 184 Conn. App. 201, 207, 194 A.3d 885, cert. denied, 330 Conn. 930, 194 A.3d 778 (2018).

It is possible, however, that an entity may be deemed an agent of the state for some purposes, but not others. For example, "[t]own boards of education, although they are agents of the state responsible for education in the towns, are also agents of the towns and subject to the laws governing municipalities. . . . [O]ur jurisprudence has created a dichotomy in which local boards of education are agents of the state for some purposes and agents of the municipality for others." (Citation omitted; internal quotation marks omitted.) Id, 207–208. An entity is entitled to invoke sovereign immunity only if it is acting in its capacity as an agent of the state. See *Purzycki* v. *Fairfield*, 244 Conn. 101, 112, 708 A.2d 937 (1998) (duty of local boards of education to supervise students performed for benefit of municipality and thus sovereign immunity not implicated in action brought by student alleging injury caused by negligent supervision), overruled on other grounds by *Haynes* v. *Middletown*, 314 Conn. 303, 101 A.3d 249 (2014).

In *Dolnack* v. *Metro-North Commuter Railroad Co.*, 33 Conn. App. 832, 639 A.2d 530 (1994), this court was faced with a similar question to the one raised in the present appeal, namely, whether, in the context of a personal injury action, the court should treat the defendant, a "public benefits corporation" created by New York state statute, as an arm of the state and, thus, whether the defendant was entitled to raise sovereign immunity as a defense. Id., 834. This court first extrapolated from decisional law of other jurisdictions a set of "characteristics" that courts should consider in determining whether an entity is entitled to raise the bar of sovereign immunity.[9] Id., 835–37. After setting forth a list of relevant factors to consider, the court cautioned: "The fact that an entity was created by a state statute does not alone establish that it is an arm of the state. Indeed, all of the [previously stated] characteristics must be examined before a trial court can conclude that a governmental body is entitled to sovereign immunity." Id., 837. Because the trial court in that case had granted a motion for summary judgment on sovereign immunity grounds without a sufficient evidentiary basis for determining whether, as a threshold matter, the defendant was entitled to sovereign immunity, this court reversed the trial court's decision and remanded the case for further proceedings. Id., 38–39.

Our Supreme Court, relying in part on our decision in *Dolnack*, later established the following analytical framework to employ when deciding whether an entity properly could assert a sovereign immunity defense. "[T]he criteria for determining whether a corporate entity is an arm of the state entitled to assert sovereign

immunity as a defense are whether: (1) the state created the entity and expressed an intention in the enabling legislation that the entity be treated as a state agency; (2) the entity was created for a public purpose or to carry out a function integral to state government; (3) the entity is financially dependent on the state; (4) the entity's officers, directors or trustees are state functionaries; (5) the entity is operated by state employees; (6) the state has the right to control the entity; (7) the entity's budget, expenditures and appropriations are closely monitored by the state; and (8) a judgment against the entity would have the same effect as a judgment against the state. To establish that an entity is an arm of the state, an entity need not satisfy every criteria. Rather, [a]ll relevant factors are to be considered cumulatively, with no single factor being essential or conclusive. . . . We recognize that these criteria are somewhat interrelated and overlapping. For example, a determination that an entity is completely financially dependent on the state could lead to an inference that the entity is controlled by the state. Similarly, a determination that the state has the right to control the entity could lend support to a determination that a judgment against the entity would affect the state." (Citation omitted; footnotes omitted; internal quotation marks omitted.) *Gordon* v. *H.N.S. Management Co.*, 272 Conn. 81, 98–100, 861 A.2d 1160 (2004). By indicating that an entity "need not satisfy every criteria," the *Gordon* court implicitly placed the burden on the entity attempting to establish its entitlement to sovereign immunity.[10] Id., 100.

In *Rocky Hill* v. *SecureCare Realty, LLC*, 315 Conn. 265, 105 A.3d 857 (2015), our Supreme Court indicated that "[w]hen applying the various factors under *Gordon*, courts must remain cognizant of the rationale underlying the doctrine of sovereign immunity. Although, in the past, we have explained that doctrine in theoretical terms, namely, that there can be no legal right as against the authority that makes the law on which the right depends . . . [t]he modern rationale for the doctrine . . . rests on the more practical ground that the subjection of the state and federal governments to private litigation might constitute a serious interference with the performance of their functions and with their control over their respective instrumentalities, funds and property. . . . Pursuant to this rationale, the doctrine protects the state from unconsented to litigation, as well as unconsented to liability. . . .

"Additionally, as . . . explained in the analogous context of eleventh amendment immunity, when a corporate entity attempts to assert a state's sovereignty without clear legislative support for that position, there is great reason for caution . . . *due to the broader consequences that potentially could result from conferring immunity.*" (Citations omitted; emphasis added; footnote omitted; internal quotation marks omitted.) Id.,

282–83. As an example of potential unwanted conse-quences, the court in *Rocky Hill* v. *SecureCare Realty, LLC*, after turning to the facts of the case before it, indicated that "a holding that the defendants essentially are state actors might not just relieve them from the obligation of complying with zoning regulations, but also could shield them from municipal taxation and *from various future lawsuits such as tort actions brought by their employees or patients or others harmed by their negligent acts* . . . [which] *could create a disincentive to safe practices.* . . . In short, sovereign immunity is strong medicine that should not be granted lightly to private actors." (Citation omitted; emphasis added; internal quotation marks omitted.) Id.

We turn then to the defendant's claim that it is a state agent entitled to sovereign immunity in the present action and, therefore, the trial court incorrectly denied the defendant's motion to dismiss. For the reasons that follow, we conclude that the criteria set forth by our Supreme Court in *Gordon* v. *H.N.S. Management Co.*, supra, 272 Conn. 98–100, on balance, weigh against concluding that the defendant was acting as an arm of the state with respect to any duty it may have to super-vise the minor plaintiff, and, thus, we also conclude that the defendant cannot properly invoke the doctrine of sovereign immunity in this negligence action.

We first consider whether "the state created the entity and expressed an intention in the enabling legislation that the entity be treated as a state agency . . . ." *Gordon* v. *H.N.S. Management Co.*, supra, 272 Conn. 98. This criterion essentially has two subparts, namely, (1) whether the defendant was created by legislation and (2) whether such legislation included language indicat-ing that the defendant be treated as a state agency. Our review of the relevant statutes leads us to answer both questions in the negative.

The formation of a regional educational service cen-ter unquestionably is authorized by state statute. See General Statutes §§ 10-66a through 10-66t. Section 10-66a provides in relevant part: "A regional educational service center *may be established* in any regional state planning area designated in accordance with section 16a-4a upon approval by the State Board of Education of a plan of organization and operation submitted by four or more boards of education for the purpose of cooperative action to furnish programs and services. . . ." (Emphasis added.)

A careful reading of this enabling legislation, thus, reveals that the defendant was not "created" by statute. To "create" generally means to "bring into existence." Merriam-Webster's Collegiate Dictionary (11th Ed. 2003).[11] Here, the legislature, through its enactment, did not bring into existence the defendant or any other regional educational service centers. It merely author-ized boards of educations in interested municipalities

to join together to create such entities, albeit with approval by the State Board of Education. If no municipalities exercise this statutory grant of authority, however, no regional educational service center would be created. Thus, it is patently incongruent with the plain language of the statute to conclude that the state "created" the defendant.

Furthermore, we can find no statutory language from which to conclude that the legislature intended entities like the defendant to be treated like a state agent for all purposes, and we reject the defendant's argument to the contrary. Section 10-66c (a) provides in relevant part: "A regional educational service center shall be a body corporate and politic. The board of a regional educational service center shall be a public educational authority acting on behalf of the state of Connecticut and shall have the power to sue and be sued, to receive and disburse private funds and such prepaid and reimbursed federal, state and local funds as each member board of education may authorize on its own behalf, to employ personnel, to enter into contracts, to purchase, receive, hold and convey real and personal property and otherwise to provide the programs, services and activities agreed upon by the member boards of education. . . ."

The defendant argues that "the express language of . . . § 10-66c demonstrates that [it] is an agent of the state . . . ." The defendant focuses the thrust of its argument on the language in subsection (a) of § 10-66c that states that "[t]he board of a regional educational service center shall be a public educational authority *acting on behalf of the state of Connecticut.*" (Emphasis added.) The defendant asserts that "acting on behalf of the state" can only mean acting as an agent of the state and, thus, entitling it to assert the state's sovereign immunity.

The defendant, however, places far more weight on this language than it will bear. Rather, as our Supreme Court has made clear, an entity might act on behalf of the state for some purpose and not others, and, thus, the existence of this language does little to advance the argument that the language could only have been intended to convey a blanket grant of sovereign immunity. Here, a plain reading of the language reveals only that a regional educational service center acts on behalf of the state when it exercises its duties as a "public educational authority." This undefined language simply begs the question because local boards of education also "are agents of the state responsible for education in the towns . . . ." *Palosz* v. *Greenwich*, supra, 184 Conn. App. 207. Nevertheless, local boards of education are not acting as agents of the state when they supervise children. See *Purzycki* v. *Fairfield*, supra, 244 Conn. 112. The fact that the legislation authorizes the defendant's board to act on behalf of the state, therefore, is

not itself dispositive of whether the legislature also intended to treat the defendant as a state agency, entitled to all the rights and privileges of the state, including sovereign immunity.

The plaintiff offers a reasonable justification as to why the legislature included the "acting on behalf of the state of Connecticut" language in the statute that has nothing to do with cloaking entities like the defendant in sovereign immunity. The "acting on behalf of the state" language was not in the statute when it initially was enacted in 1972. Rather, that language was added to subsection (a) as a technical change to the statute in 1987, at the same time the legislature added subsections (b) through (d), granting the regional educational service centers the power to issue bonds, notes or other obligations. Public Acts 1987, No. 87-460, § 1. The language "acting on behalf of the state" is best construed in light of those contemporaneous additions. Because the Internal Revenue Code excludes from gross income interest made on any state issued bonds; see 26 U.S.C. § 103 (a) (2012); it is reasonable to assume that the legislature intended to designate regional educational service centers as "acting on behalf of the state" in order to allow them to reap the benefit of selling tax-free bonds.

The defendant's argument also fails to account for the language in the statute that immediately precedes the language authorizing a regional educational service center to act "on behalf of the state," namely, the language designating such entities as a "body corporate and politic." We do not read statutory language in isolation, but rather must consider it within the context of the statute as a whole and in harmony with surrounding text. Rather than creating either a state or municipal agency, we construe the legislature's use of the language describing a regional educational service center as a "body corporate and politic" as intending to create an independent corporate entity that is separate and distinct from state government. See *Gordon* v. *Bridgeport Housing Authority*, 208 Conn. 161, 173, 544 A.2d 1185 (1988) (construing statute describing municipal housing authorities as "body corporate and politic"; General Statutes § 8-40; as creating independent corporate entity that is not agent of municipality in which it resides).

We turn next to the language that follows the "acting on behalf of the state" language, namely, that regional educational service centers have the "power to sue and be sued." We agree with the trial court that this language supports a conclusion that the legislature intended that a regional educational service center would not enjoy sovereign immunity but, instead, would be subject to suit in the same manner as other entities that do not enjoy sovereign immunity. The language is not the type that the legislature typically would use if it intended that

an entity be protected by sovereign immunity, which protects the state not only from liability but from being sued in the first instance.[12]

Arguably, the defendant, like a local board of education, is authorized to act for the state in its role as a provider of educational services to the citizens of the state. "[T]he *furnishing of education* for the general public, required by article eighth, § 1, of the Connecticut constitution, is by its very nature a state function and duty. . . . This responsibility has been delegated to local boards which, as agencies of the state in charge of education in the town . . . possess only such powers as are granted to them by the General Statutes expressly or by necessary implication." (Citation omitted; emphasis added; internal quotation marks omitted.) *Campbell* v. *Board of Education*, 193 Conn. 93, 96–97, 475 A.2d 289 (1984). Nevertheless, when it comes to overseeing the day to day care of students enrolled in one of its schools or other facilities, nothing in the enabling legislation expressly states or of necessity implies that regional educational service centers like the defendant stand in any different position than the municipalities that formed them and entrusted their students to them. Although municipal boards of education have been described as "agencies of the state in charge of education in the town"; (internal quotation marks omitted) id., 97; municipalities are not entitled to invoke sovereign immunity in a negligence action brought by a student injured at a school under their control. See *Purzycki* v. *Fairfield*, supra, 244 Conn. 111–12. We find unpersuasive the defendant's reliance on the "acting on behalf of the state of Connecticut" language as definitive proof that the legislature intended the defendant to be treated as a state agent in all circumstances.

The enabling legislation does contain some express language that strongly suggests that the legislature did *not* intend "the entity be treated as a state agency" *for all purposes*. Subsection (i) of § 10-66c provides: "A regional educational service center shall be considered an agency of the state for purposes of subdivision (14) of subsection (d) of section 42a-9-109." The defendant ignores this language, however, likely because its existence undermines rather than bolsters the defendant's position.

In subsection (i), the legislature expressly states that the defendant should be "considered an agency of the state" for purposes of applying an exclusion in the Uniform Commercial Code with respect to secured transactions, further details of which are not relevant to this discussion. "[I]t is a basic tenet of statutory construction that [w]e construe a statute as a whole and read its subsections concurrently in order to reach a reasonable overall interpretation." (Internal quotation marks omitted.) *Planning & Zoning Commission* v. *Freedom of*

*Information Commission*, 316 Conn. 1, 12–13, 110 A.3d 419 (2015). Moreover, as we have already indicated, "the legislature [does] not intend to enact meaningless provisions. . . . [I]n construing statutes, we presume that there is a purpose behind every sentence, clause, or phrase used in an act and that no part of a statute is superfluous." (Internal quotation marks omitted.) *Connecticut Podiatric Medical Assn.* v. *Health Net of Connecticut, Inc.*, 302 Conn. 464, 474, 28 A.3d 958 (2011).

If the language in subsection (a) of § 10-66c indicating that the defendant was "acting on behalf of the state of Connecticut" was intended by the legislature to convey that the defendant generally was an agent of the state, as opposed to merely acting with state authority in certain instances or, as the plaintiffs suggest, permitting favorable tax treatment with respect to bonds, there would have been no need to mandate in subsection (i) that the defendant be treated as a state agency for purposes of the UCC secured transaction exclusion. Construing the enabling legislation as a whole, we conclude with respect to the first of the *Gordon* criteria that the defendant has not demonstrated that it was created by the state or that the legislature intended that it be treated as a state agency with respect to its supervision of children attending its schools or programs.

We turn next to the second criterion which asks whether the defendant "was created for a public purpose or to carry out a function integral to state government . . . ." *Gordon* v. *H.N.S. Management Co.*, supra, 272 Conn. 98. As we have already indicated, it is a constitutionally mandated core function of the state to ensure that all students in the state are provided with a minimally adequate education, which includes providing special education services.[13] Authorizing the formation of regional educational service centers undoubtedly was intended to provide local school boards with a tool to more effectively and efficiently fulfill this function. This second criterion, therefore, seems to favor the position of the defendant.

The third factor to be considered is whether the defendant "is financially dependent on the state . . . ." Id., 98–99. To answer this question, we look to our statutes, the defendant's constitution and bylaws, and the factual admissions of the defendant at the hearing on the motion to dismiss. Article III of the defendant's constitution provides that the defendant consists of the member boards of education that pay dues to the defendant in accordance with Article IX. Article IX, titled "Dues and Administration Expenses," provides that the amount of dues are set every year by the defendant's representative council and that "[a]ny necessary administrative and overhead expenditures as determined by the [r]epresentative council shall be shared

jointly by the participating [b]oards of [e]ducation." At the hearing on the motion to dismiss, the court asked the defendant's counsel about the manner in which the defendant was funded, and counsel agreed with the court that the regional educational service centers are funded by the municipalities.

There is no dispute that, as a result of block grants, each municipality receives funds from the state for the purpose of discharging the educational requirements of its residents and that some of this money flows to the regional educational service centers. See General Statutes § 10-262h and General Statutes § 10-66j (b).[14] We do not view such indirect state funding, however, as making regional educational service centers "financially dependent" on the state. The defendant made no effort to demonstrate to what extent it relies on state funding and the record before us is silent as to what percentage, if any, of the regional educational service centers funding comes directly through block grants as opposed to funding through dues and tuition payments by municipalities. Nevertheless, on the basis of the record presented and the defendant's own admissions, it is clear that the local board, and not the state, is directly responsible for much of the funding provided to the defendant for its services.[15] On balance, the third criterion weighs in favor of the plaintiffs.

We address together the fourth and fifth factors, namely, whether the defendant's "officers, directors, or trustees are state functionaries" and whether the defendant "is operated by state employees . . . ." *Gordon* v. *H.N.S. Management Co.*, supra, 272 Conn. 99. We answer both questions in the negative.

Section 10-66b provides in relevant part: "The operation and management of any regional educational service center shall be the responsibility of the board of such center to be composed of at least one member from each participating board of education, selected by such board of education. The board of the regional educational service center may designate from its membership an executive board which shall have such powers as the board of the regional educational service center may delegate and which are consistent with this part. . . . The director of the regional educational service center shall serve as the executive agent of the board of the regional educational service center."

The defendant's constitution and bylaws, articles II and III, make clear that it is governed by a representative council that is made up of members from its constituent local boards of education. Under article VI of the defendant's constitution, officers are chosen annually from among the members of the representative council. These requirements are statutorily mandated. See § 10-66b ("[t]he operation and management of any regional educational service center shall be the responsibility of the board of such center to be composed of at least

one member from each participating board of education, selected by such board of education"). No one from the state Board of Education or any other "state functionaries" or state employees are "officers, directors, or trustees" of the defendant or are involved in the operation of the defendant's programs or services. The fourth and fifth criteria accordingly weigh against a finding that the defendant is an agent of the state.

Pursuant to the sixth and seventh *Gordon* factors, we consider whether "the state has the right to control the [defendant]" or whether the defendant's "budget, expenditures, and appropriations are closely monitored by the state . . . ." *Gordon* v. *H.N.S. Management Co.*, supra, 272 Conn. 99–100. As we already have indicated, the defendant is under the managerial control of the participating municipal boards of education that formed it. There is nothing in the record before us suggesting that the state has any direct oversight or control over the defendant, its property or its operations other than to conduct an annual audit of finances and evaluation of programs and services. General Statutes §§ 10-66g and 10-66h. There is no requirement in the defendant's bylaws requiring that budgets, expenditures, or appropriations be reported to the state Board of Education for approval or that the state "closely" monitor its day-to-day operations at regional educational service centers. The lack of state involvement in the regular management of the regional education service centers leads us to conclude that the sixth and seventh criteria also weigh strongly against the defendant's position that it is entitled to sovereign immunity because litigation could not seriously be expected to interfere with the performance of any important state function or its control over state instrumentalities, funds or property.

Finally, we must consider whether "a judgment against the [defendant] would have the same effect as a judgment against the state." *Gordon* v. *H.N.S. Management Co.*, supra, 272 Conn. 100. A finding of liability against the defendant in favor of the plaintiffs likely would result in an award of monetary damages. Such damages would be assessed against the defendant and would become an operating expense of the defendant that ultimately would be paid by the municipalities in accordance with article IX of the defendant's constitution. A judgment against the defendant would not have a direct adverse effect on the state. In contrast, a judgment against the state would mean that the state itself would be responsible for paying damages, presumably out of the state's coffers. This eighth criterion thus seems to weigh against concluding that the defendant is an agent of the state.

In sum, the majority of the *Gordon* criteria weigh against a finding that the defendant is an entity entitled to the protections of sovereign immunity. Having considered and weighed the various *Gordon* criteria, and

considering them in light of the circumstances presented in this case, we conclude that the defendant acts as an agent of its constituent municipal boards of education, not the state, when overseeing the care and safety of children enrolled in its schools and programs. It truly would be a bizarre result to construe the relevant statutes as conferring sovereign immunity to the defendant, if, under identical facts, a municipality would not be so entitled.

The present litigation simply cannot reasonably be viewed as representing the type of serious interference with a state's function or control that justifies the "strong medicine" of sovereign immunity. (Internal quotation marks omitted.) See *Rocky Hill* v. *SecureCare Realty, LLC*, supra, 315 Conn. 283. Conferring such immunity could also have unintentional and unwanted consequences. Recognizing a blanket shield protecting regional educational service centers in all tort actions, for instance, could disincentivize them from engaging in the types of oversight and control necessary to protect students with special needs, a particularly vulnerable class of persons. Because the defendant is not entitled to the protection of sovereign immunity in this negligence action, the court properly denied the defendant's motion to dismiss.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] In addition to the defendant, the operative revised complaint named as additional defendants the town of Trumbull; the Trumbull Board of Education; Timothy M. Herbst, the first selectman of Trumbull; Ralph Iassogna, Trumbull's superintendent of schools; Cooperative Educational Services Foundation, Inc.; the city of Bridgeport; Bill Finch, the mayor of Bridgeport; the Bridgeport Board of Education; and Paul Vallas, Bridgeport's superintendent of schools. The plaintiffs withdrew the action as to Herbst, Iassogna, the town of Trumbull, the Trumbull Board of Education, and Cooperative Educational Services Foundation, Inc. The court later granted summary judgment in favor of Finch, Vallas, the city of Bridgeport, and the Bridgeport Board of Education. Thus, Cooperative Educational Services is the sole remaining defendant in this action and, accordingly, we refer to it as the defendant throughout this opinion.

[2] Although, ordinarily, the denial of a motion to dismiss is not an immediately appealable final judgment, the denial of a motion to dismiss that raises a colorable claim of sovereign immunity is a final judgment. See *Shay* v. *Rossi*, 253 Conn. 134, 165, 749 A.2d 1147 (2000) ("unless the state is permitted to appeal a trial court's denial of its motion to dismiss, filed on the basis of a colorable claim of sovereign immunity, the state's right not to be required to litigate the claim filed against it would be irretrievably lost"), overruled in part on other grounds by *Miller* v. *Egan*, 265 Conn. 301, 325, 828 A.2d 549 (2003).

[3] A gait belt is a device used by caregivers to prevent falls when assisting the movement of persons who have mobility issues, problems with balance, or other medical conditions.

[4] The defendant argues in its brief before this court that the gravamen of the plaintiffs' negligence allegations against the defendant do not actually involve a failure by itself or its agents to supervise the minor plaintiff, but rather concern "a failure to comply with [her] individualized needs as a special education student." By making this argument, the defendant seeks to differentiate between inadequate supervision of school children, which is decidedly a municipal function; see *Purzycki* v. *Fairfield*, 244 Conn. 101, 112, 708 A.2d 937 (1998), overruled on other grounds by *Haynes* v. *Middletown*, 314 Conn. 303, 323, 101 A.3d 249 (2014); and the development or furnishing of special education services generally, which arguably has a

closer nexus to a state function. See *M.H.* v. *Bristol Board of Education*, 169 F. Supp. 2d. 21, 38 (D. Conn. 2001). A reading of the specifications of negligence in the operative complaint, however, belies the defendant's argument.

In particular, the plaintiffs alleged that the defendant had failed (1) to hire and train properly its staff tasked with supervising minor children, (2) to supervise properly persons they assigned to escort students who required the use of gait belts, (3) to implement safety guidelines with respect to students requiring the use of specialized equipment, (4) to implement proper training for employees or agents assigned to children who needed to use specialized equipment, (5) to have adequate numbers of employees or agents in place to monitor student activities in the parking lot, and (6) to require as a condition of funding that their agents assured any persons charged with providing services were trained and supervised properly.

[5] A waiver of sovereign immunity in a suit seeking money damages requires either a clear legislative intent to waive sovereign immunity; see *Miller* v. *Egan*, supra, 265 Conn. 314; or a granting of waiver by the claims commissioner pursuant to General Statutes § 4-160.

[6] According to the defendant's website, the defendant consists of school board members from the following municipalities: Bridgeport, Darien, Easton/Region #9, Fairfield, Greenwich, Monroe, New Canaan, Norwalk, Ridgefield, Redding, Shelton, Stamford, Stratford, Trumbull, Weston, Westport, and Wilton. Cooperative Educational Services, About C.E.S., "Representative Council," available at https://www.ces.k12.ct.us/page.cfm?p=3393 (last visited November 29, 2018). It is not clear from the current record which of these municipalities was involved in the formation of the defendant.

[7] Although discussed at the hearing before the trial court, nothing in this opinion should be read as addressing whether the defendant might be entitled to invoke qualified governmental immunity pursuant to General Statutes § 52-557n (a) (2) (B) or whether the "identifiable person-imminent harm" exception to governmental immunity is implicated and applicable under the facts of this case. See *Edgerton* v. *Clinton*, 311 Conn. 217, 229–31, 86 A.3d 437 (2014).

[8] It is axiomatic that our objective in construing statutory language "is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . [If] a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . . The test to determine ambiguity is whether the statute, when read in context, is susceptible to more than one reasonable interpretation." (Internal quotation marks omitted.) *Gonzalez* v. *O & G Industries, Inc.*, 322 Conn. 291, 302–303, 140 A.3d 950 (2016).

[9] Specifically, the court in *Dolnack* stated: "Several factors for consideration have evolved in determining whether a given entity is an arm of the government entitled to be clothed in the tort immunity of the state. These inquiries include whether the entity was created by the state and to whose control the entity is subject, an analysis of the issues involved and the relief sought, whether the state itself has a pecuniary interest or a substantive right in need of protection, whether the governmental body functions statewide, does the state's work, was created by the state legislature and is subject to local control, and to what extent the entity depends financially on state coffers, and whether the instrumentality was created as a state agency and empowered to accomplish a public purpose. Some other considerations are the character of power delegated to the governmental body by a legislative enactment, the relation of the entity to the state, whether the entity is a public corporation separate from the state, and whether the instrumentality uses state owned land or owns the land independently." (Footnotes omitted; internal quotation marks omitted.) *Dolnack* v. *Metro-North Commuter Railroad Co.*, supra, 33 Conn. App. 836–37.

[10] In the present appeal, neither the trial court nor the parties have cited to *Gordon* or utilized the criteria set forth in that case and its progeny.

Nevertheless, the analytical framework used by our Supreme Court in *Gordon* is binding upon us and many of the parties' arguments in the present case fall sufficiently within one or more of the *Gordon* criteria. See also *Turner* v. *Eastconn Regional Educational Service Center*, United States District Court, Docket No. 3:12-CV-788 (VLB) (D. Conn. Mar. 15, 2013) (analyzing *Gordon* criteria in determining that regional education service center not state agent for purposes of sovereign immunity); *Bogle-Assegai* v. *Bigelow*, United States District Court, Docket No. 3:01-CV-2366, Docket No. 3:01-CV-2367 (EBB) (D. Conn. Oct. 25, 2007) (same).

[11] There is no statutory definition of "create" to consult and, therefore, General Statutes § 1-1 (a) directs us to use the "commonly approved usage" of that word. In so doing, courts frequently look to the dictionary definition of a term. See, e.g., *Kuchta* v. *Arisian*, 329 Conn. 530, 537, 187 A.3d 408 (2018) ("[i]n the absence of a statutory definition . . . our starting point must be the common meaning of the term, as reflected in the dictionary").

[12] The defendant also argues in its brief that the legislature, in enacting § 10-66c, did not waive the state's sovereign immunity by providing that the defendant has the "power to sue and be sued." Although the trial court referred to the "sue and be sued" language as supporting its conclusion that the defendant was not entitled to invoke sovereign immunity, the court did not base its denial of the motion to dismiss on a finding of waiver. Because we conclude that the defendant is not an entity entitled to the protection of sovereign immunity under the circumstances before us, we do not consider whether sovereign immunity was waived. Instead, we construe this language as evincing an intent that the defendant is not to be treated as an agent of the state for all purposes.

[13] The constitution of Connecticut, article eighth, § 1, provides: "There shall always be free public elementary and secondary schools in the state. The general assembly shall implement this principle by appropriate legislation." General Statutes § 10-4 (a) provides in relevant part that the state's Board of Education "shall have general supervision and control of the educational interests of the state, which interests shall include preschool, elementary and secondary education, special education, vocational education and adult education . . . ."

[14] General Statutes § 10-262h provides in relevant part that "each town maintaining public schools according to law shall be entitled to an equalization aid grant" and sets forth in detail how the amount of the grant is to be calculated.

General Statutes § 10-66j (b) provides: "Each regional educational service center shall receive an annual grant equal to the sum of the following:

"(1) An amount equal to fifty per cent of the total amount appropriated for purposes of this section divided by six;

"(2) An amount equal to twenty-five per cent of such appropriation multiplied by the ratio of the number of its member boards of education to the total number of member boards of education state-wide; and

"(3) An amount equal to twenty-five per cent of such appropriation multiplied by the ratio of the sum of state aid pursuant to section 10-262h for all of its member boards of education to the total amount of state aid pursuant to section 10-262h state-wide."

[15] In considering this factor and whether the defendant is financially dependent on the state, we note that municipalities also receive directly significant funding from the state for the purposes of fulfilling their state-mandated obligation to provide educational services. See General Statutes § 10-262h. Accordingly, the mere fact that regional educational service centers also receive state funds does not compel a conclusion that they are state agents for all purposes because, if that were true, the municipal boards of education also would be state agencies simply because they receive significant educational funding from the state to educate all students.